478 A.2d 451

COMMONWEALTH ex rel., Robert D. MILLER and
Nellie M. Miller, his wife,

v.

Cindy MILLER, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 25, 1984.

Filed May 25, 1984.

David B. Reiss, Connellsville, for appellant.

Murray I. Horewitz, Connellsville, for appellees.

Before WIEAND, TAMILIA and POPOVICH, JJ.

TAMILIA, Judge:

This is an appeal from an Order entered by the Court of Common Pleas of Fayette County awarding visitation rights to appellees, the paternal grandparents of Amanda Miller, appellant's daughter. Appellant contends that due to the hostility, tension and conflict existing in her relationship with the appellees it would be in the best interests and welfare of the child for the court to deny visitation by the appellees. We disagree, and for the reasons stated below, affirm the Order awarding visitation to the appellees.

This case originated when a petition for visitation of Amanda Miller, born February 26, 1981, was filed by Robert D. Miller and Nellie M. Miller, his wife, the appellees. On January 6, 1983, a hearing on this petition was held before the Honorable Conrad B. Capuzzi of the Court of Common Pleas of Fayette County. Testimony at this hearing revealed that the child, Amanda Miller, was born of the marriage between Alan Miller and Cindy Miller, the appellant, and that this couple had lived next door to the appellees. Testimony further disclosed that Alan Miller was involved in a fatal accident on August 18, 1981. Prior to Alan Miller's death, the relations between appellant and her in-laws, the appellees, were stable as the parties frequently saw each other when the appellees visited their grandchild. However, shortly after the death of Alan Miller, the relationship between the parties deteriorated due to disagreements regarding which lawyer the appellant should retain to handle the civil lawsuit resulting from her husband's death, as well as a disagreement over appellant's desire to buy a gravesite next to her deceased husband's gravesite. The parties also bickered over certain items of personal property belonging to the deceased, which appellant wanted returned to her.

Since August 18, 1981, visits between the appellees and their grandchild were few and the ones which occurred were strained. Subsequent to February 26, 1982, the only visit between the child and the appellees was a pre-hearing visit ordered by Judge Capuzzi. This pre-hearing visit was observed by Margaret McGarrity, a caseworker representing Fayette County Children and Youth Services, who concluded that while the relations between the parties remained strained, the interaction between the grandparents and the child was positive.

At the conclusion of the hearing on January 6, 1983, a tentative agreement was reached between the parties for visitation by the grandparents of Amanda Miller on a regular basis. On March 31, 1983, however, a petition for rehearing was filed by the appellees alleging that appellant, while initially complying with the visitation agreement, refused to continue to allow the appellees visitation with Amanda.

On May 19, 1983, a hearing was held before the Honorable Conrad B. Capuzzi pursuant to the petition for rehearing. While no testimony was offered, statements by counsel in the presence of all parties, revealed that the visitation between appellees and Amanda went well for the first three weeks, but then discontinued.

Counsel for appellant contended that visitation had ceased because appellant disapproved of certain things which the appellees permitted the child to do during the visits.[1] It was also alleged that the appellees attempted to extend their visits beyond the time period set by the hearing judge and did not permit appellant to comfort her child during such visits. Therefore, appellant urged the court to deny any further visitation by appellees. Despite appellant's counsel's requests, the court, still believing that an

---

1.  Specifically, appellant contended that the appellees allowed Amanda to climb steps leading from the first floor of their home to the second floor, and permitted her to play with a closed pocket knife and bubble solution.

amicable resolution could be accomplished, directed Fayette County Children and Youth Services to once again arrange and monitor visits between the parties and to file reports on them. On June 29, 1983, a report was filed and copies were provided to counsel, who made no exceptions to its contents. The report revealed that Mimi McDonough, a caseworker, observed the visits and concluded that while the child reacted well with her grandparents, tension and conflict continued between the parties. It also noted that appellant was agreeable to visits in her home and presence.

On June 29, 1983, the court entered an Opinion and Order continuing visitation and establishing a set schedule based upon its review of the entire record.[2] It is from this Order that the instant appeal has been filed.

The sole issue before us is whether the intra-family discord between the parties requires that the paternal grandparents' visitation award be denied in the best interests and welfare of the child.

At the outset, we note that the instant case involves a visitation arrangement for short periods of time and not an award of custody. The Supreme Court of Pennsylvania recently differentiated these two arrangements in *Commonwealth ex rel. Zaffarano v. Genaro*, 500 Pa. 256, 455 A.2d 1180 (1983), when it stated:

> ... [A]t one end of the spectrum is custody, which is a relatively permanent arrangement that involves keeping and caring for a child on a continual basis and that affords the custodian the greatest degree of day-to-day control over the child. At the opposite end of the spectrum is visitation, which allows for the least amount of control over the child and contacts of a relatively short

---

**2.** Testimony revealed that the appellees were, in addition to visitation, seeking partial custody of their grandchild, but the court concluded that this would not presently be in her best interest. This decision was predicated upon the court's view of the already delicate relationship between the parties.

duration since visits must be held in the presence of the child's custodian.[3]

*Id.*, 500 Pa. at 260, 455 A.2d at 1182. (footnotes omitted)

■ Our paramount concern in both custody and visitation cases is the best interests and permanent welfare of the child. *Commonwealth ex rel. Pierce v. Pierce,* 493 Pa. 292, 426 A.2d 555 (1981), "since the goal in each case is to foster those relationships which will be meaningful for the child, while protecting the child from situations which would have a harmful effect." *Commonwealth ex rel. Zaffarano v. Genaro, supra* 500 Pa. at 260, 455 A.2d at 1182.

■ Because of situations like that before us, our legislature enacted the Custody and Grandparents Visitation Act, 23 P.S. § 1001 et seq. (1981).[4] This Act adopts the best interests of the child standard and provides:

> If a parent of an unmarried child is deceased, the parents or grandparents of the deceased parent may be granted reasonable visitation rights to the unmarried child by the court upon a finding that visitation rights would be in the best interests of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grand-

3. Pennsylvania recognizes three possible custodial arrangements: "custody", "partial custody" (also called "limited custody" or "divided custody"), and "visitation". *Scott v. Scott,* 240 Pa.Super. 65, 69, 368 A.2d 288, 291 (1976) (Spaeth, J., Concurring). Pennsylvania Rule of Civil Procedure 1915.1(b), 42 Pa.C.S.A. adopts these terms and provides the following definitions:
. . . .
"custody" means the legal right to keep, control, guard, care for and preserve a child and includes the terms "legal custody", "physical custody" and "shared custody;"
. . . .
"partial custody" means the right to take possession of a child away from the custodial person for a certain period of time;
. . . .
"visitation" means the right to visit a child, but does not include the right to remove the child from the custodial person's control. *Id.*

4. Act of November 5, 1981, P.L. 322, No. 115.

parents of the deceased parent and the child prior to the application.

23 P.S. § 1012.

Therefore, parents of deceased children may obtain reasonable visitation rights with respect to children of such deceased children whenever: "1) such visitation will be in the best interests of the child, and 2) such visitation will not interfere with the parent-child relationship." *Commonwealth ex rel. Shee v. Holewski*, 316 Pa.Super. 509, 514–515, 463 A.2d 480, 483 (1983).

In a dispute between a parent and grandparents, the parent has a prima facie right to custody which will be forfeited only if convincing reasons appear that the child's best interests will be served by an award to the grandparents. *In re Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977). However, we are not here concerned with an award of custody, but simply a temporary right of visitation. In *Commonwealth ex rel. Williams v. Miller*, 254 Pa.Super. 227, 385 A.2d 992 (1978), this Court set forth the following "sliding scale" approach in determining the burden of proof on a grandparent or other third party seeking visitation, as opposed to custody:

> Since visitation is correlative to custody a similar test should apply when a third party seeks visitation, although the burden on the third party should not be so heavy, for an order granting visitation is a far lesser intrusion, or assertion of control, than is an award of custody.
>
> *     *     *

When seeking visitation, a third party must show reasons to overcome the parent's prima facie right to uninterrupted custody. However, the reasons need not be so convincing as in a custody case. In a custody case, the third party must convince the court that it is in the child's best interest *to take custody* from a parent and award it to the third party. In a visitation case, the third party need only convince the court that it is in the child's best interest *to give some time* to the third party. As the

amount of time requested moves the visit further from a visit and closer to custody, the reasons offered in support of the request must become correspondingly more convincing.

*Id.*, 454 Pa.Superior Ct. at 230, 385 A.2d at 994 (emphasis in original). Applying the above rationale to the instant case, the appellees need only convince this court that it would be in their grandchild's best interests to have access to their companionship.

It has been repeatedly stated that appellate courts must exercise an independent judgment when reviewing custody or visitation cases. *Commonwealth ex rel. Pierce v. Pierce*, 493 Pa. 292, 426 A.2d 555 (1981). In discussing the appropriate scope of review for custody and visitation cases, the Supreme Court of Pennsylvania has recently stated that:

> [a]lthough we have held that the scope of review in custody matters is of the broadest type, and appellate courts are not bound by deductions or inferences made by a trial court, nevertheless, appellate courts "may not, and in fact cannot, substitute their own findings of fact with respect to the parties' emotional feelings and attitudes towards one another."

*Commonwealth ex rel. Davenport v. Montgomery County Children and Youth Services*, 501 Pa. 472, 476, 462 A.2d 221, 223 (1983). (Quoting *Commonwealth ex rel. Zaffarano v. Genaro, supra* 500 Pa. at 261, 455 A.2d at 1183). The reasoning behind this limitation on our scope of review is that the hearing judge has the opportunity to observe the demeanor of the witnesses and therefore is in the best position to determine their credibility and sincerity. *Id.* 501 Pa. at 475, 462 A.2d at 223–224.

Appellant relies on *Commonwealth ex rel. Zaffarano v. Genaro, supra*, a similar factual situation, where the maternal grandparents of the child filed for temporary custody and visitation privileges pursuant to the Custody and Grandparents Visitation Act, 23 P.S. § 1001 et seq. The Supreme Court reversed the order of the Superior Court

granting temporary custody and visitation privileges to the grandparents, and reinstated the lower court's order dismissing the grandparents' petition. In reaching its decision, the Court pointed out that the record contained ample evidence to support the hearing judge's finding of bitterness between the parties. The Court also concluded that due to the possible detrimental effects on the child which may result from the hostility between the parties, the benefits to the child from a relationship with its grandparents were outweighed by placing the child "in the crossfire" between the feuding parties. *Id.* 500 Pa. at 264, 455 A.2d at 1184.

We believe that the instant case is factually distinguishable from *Commonwealth ex rel. Zaffarano v. Genaro, supra,* in that there, the degree of hostility and bitterness between the parties was extensive and led to the conclusion that the conflict was irreconcilable.[5] Here, the lower court provided a complete record as well as a comprehensive opinion which concluded that while there was animosity between the child's mother and her grandparents, such conflict was not irreconcilable and an amicable resolution could be worked out between the parties. Moreover, there was nothing in the record to indicate that the grandparents ever acted in a fashion detrimental to the appellant's relationship with Amanda or criticized appellant's ability to care for the child, save for one isolated and harmless incident. On the contrary, appellees testified that they loved their grandchild very much and were capable of caring for her. Therefore, we conclude that the instant case is distinguishable from *Commonwealth ex rel. Zaffarano v. Genaro, supra,* in that the differences between the parties herein

5. In *Commonwealth ex rel. Zaffarano v. Genaro,* 500 Pa. 256, 455 A.2d 1180 (1983), the differences between the parties were extensive and the conflict was emotionally charged. Each side accused the other of being unfit and incapable of caring for the child. Specifically, the grandparents placed the blame for the death of their daughter on the appellant, who in turn, instructed his in-laws to hide pictures of his deceased wife from the child. *Id.,* 500 Pa. at 265, 455 A.2d at 1184.

are not extensive and that Amanda will not suffer devastating consequences.

■ The relationship between a child and his or her grandparents is a special one. When a child loses a natural parent at an early age, this relationship becomes even more special as the grandparents can help to fill the void which exists due to the loss of a parent. Since the polestar of our analysis is the best interests and welfare of the child, we cannot overlook the ultimate result that grandparent visitation is beneficial for a child's development in that it establishes family ties which can continue long beyond childhood. Only when such visitation becomes counterproductive, will we intervene and deny it.

■ We are aware that in certain situations, the relations between the grandparents and the child's surviving parent deteriorate to such a degree that the friction between the parties outweighs any benefit to the child from a relationship with his or her grandparents. *Commonwealth ex rel. Zaffarano, supra,* 500 Pa. at 263, 455 A.2d at 1184. Here, however, we are hard-pressed to find any evidence that the child will not benefit from a continuing relationship with her grandparents.[6] Since the visitation schedule involves only short periods of time, we conclude that it will not interfere with the child's relationship with her mother.[7]

Thus, we hold that the Order entered on June 29, 1983, granting the appellees' visitation is affirmed.

Order affirmed.

POPOVICH, J., concurred in the result.

**6.** While our determination regarding visitation is the opposite of that reached in *Commonwealth ex rel. Zaffarano v. Genaro, supra,* both decisions upheld the findings of the lower court.

**7.** Our review of the record has disclosed that appellant has created most of the problems between the parties by refusing to cooperate and allow the appellees to visit with Amanda. This conclusion is supported by the reports of the caseworkers which indicate that appellant experiences anxiety whenever she is separated from her child and believes that she is the only one who can care for her child.