581 A.2d 670

**Darlene A. BISHOP and Norman S. Bishop, Appellees,**

v.

**Lisa Marie PILLER, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 10, 1990.

Filed Oct. 29, 1990.

William C. Wickkiser, Allentown, for appellant.

James L. Heidecker, Jr., Allentown, for appellees.

Before CIRILLO, President Judge, and MONTEMURO and JOHNSON, JJ.

MONTEMURO, Judge:

This is an appeal from an order of the Court of Common Pleas of Lehigh County granting appellee ("Paternal Grandmother") visitation with her grandson. Appellant, Lisa Marie Piller ("Mother"), argues that there is no legal relationship between a paternal grandmother of an illegitimate child and the child, therefore, there is no basis for a grant of visitation. The appellant further contends that visitation would not be in the best interests of the child. We disagree and affirm the order of the trial court.

Appellant met Norman Bishop ("Father") in late 1987 and began dating him in February 1988. She became pregnant in April 1988, and her son, Patrick Jeremy Piller, was born on December 23, 1988. Mother and Father never cohabitated nor planned to be married, however, Father's name was placed on the birth certificate as Patrick's father. Additionally, Father's insurance covered the costs of the birth. N.T., January 10, 1990 at 82. The child has lived with Mother in maternal grandmother's home since his birth.

There was some evidence that Father has a drug and alcohol problem and that he had been violent towards Mother. N.T. at 85–89. He was incarcerated in May 1989 and is serving a term of 2 to 4 years for aggravated assault on a person who tried to help him while he was attempting to take his own life. N.T. at 29. Before he went to prison, however, he and his mother visited with Patrick and provided some food, formula and clothing. *See* N.T. at 17–18. The extent of the gifts is unclear, as Mother and Maternal Grandmother disagree with Paternal Grandmother about the amount of the food, etc. N.T. at 66–67, 84. Appellee also donated blood in Mother's name in case she or the baby needed it and when the child was first born, appellee visited the hospital every day. Thereafter, she tried to visit as much as possible. N.T. at 13, 19–20. Additionally, appellee bought the child shoes (which did not fit), and appellant refused appellee's offer to buy the child his specialized shoes. N.T. at 19, 36. The trial court found that paternal "grandmother has demonstrated her love and affection for this child by her words and her actions." Trial Court Opinion, February 21, 1990.

We note that in addition to what appellee and Father did for the child, Mother and Patrick visited Father in Fairview Hospital and in the Carbon County Hospital soon after his incarceration. N.T. at 78, 91. Also, appellant sent Father a Valentine's Day card from Patrick and her two months after the child was born. There was, then, some attachment between the parents.

On December 13, 1989 the Court of Common Pleas of Lehigh County issued an order granting the paternal grandmother visitation at her home on Sundays from 4:00 p.m. to 6:00 p.m. A hearing was held on January 10, 1990 to determine whether the grandparent of an illegitimate child has rights to visitation. On February 21, 1990 the trial court entered an order confirming custody in Mother and granting visitation to Paternal Grandmother. This appeal by Mother followed.

In reviewing visitation orders, appellate courts are not bound by the trial court's deductions, inferences and interpretations of evidence. We have independent judgment to consider the merits and to provide an order that is both correct and just. Despite having this broad scope of appellate review, we are mindful that matters of credibility are solely for the trial court's judgment; only the trial judge can observe demeanor and assess trustworthiness.

*Bucci v. Bucci*, 351 Pa.Super. 457, 460–61, 506 A.2d 438, 440 (1986) (citing *Suroviec v. Mitchell*, 347 Pa.Super. 399, 500 A.2d 894 (1985); *Commonwealth ex rel. Miller v. Miller*, 329 Pa.Super. 248, 478 A.2d 451 (1984)). Because the trial court observed each person involved, we will rely on its assessment of character, interest in the child and ability to care for him.

■ Mother argues that because father has not filed any acknowledgement of paternity with the Department of Health pursuant to 23 Pa.C.S.A. § 8302 there is no legal relationship between the child and him and therefore no legal relationship between the paternal grandmother and Patrick. The language of the statute, however, is not mandatory in that it provides, "The father of a child born to an unmarried woman *may* file with the Department of Health...." 23 Pa.C.S.A. § 8302 (emphasis added). In the present case, Father did not file with the Department of Health, but none of the parties are disputing his paternity. Mother placed his name on the birth certificate, and Father did not contest it. N.T. at 101. It would be unfair to acknowledge Father's paternity for some purposes, such as using his insurance to cover costs, but not others, such as allowing Paternal Grandmother a relationship with her grandson.

Given that all of the parties agree about who the father is, there is no reasonable distinction that can be drawn that would allow Maternal Grandmother more rights than Paternal Grandmother. Certainly they both share the same biological relationship with Patrick, and as far as we can

tell, Patrick would benefit greatly by having meaningful contact with both of his grandmothers. We are unwilling to distinguish between the grandparents absent a finding that visitations with one would not be in the child's best interest.

Title 23 Pa.C.S.A. §§ 5311–5313 provides three instances in which the court should consider visitation for grandparents: (1) when one parent has died; (2) when the parents are separated for six months or more; (3) when the child has lived with the grandparents for a year or more. In each instance, the statute explicitly states that visits must be in the best interest of the child. The trial court posited that appellee could get visitation under the second situation, that the parents had been separated. *See* 23 Pa.C.S.A. § 5312. The trial court states that it is using the common meaning of the word "separate" taken from the Webster's Third New International Dictionary; "separation is defined as an act or instance of dividing or an act or instance of parting company." Trial Court Opinion, February 21, 1990 at 5. This may be strained in that the understanding of the word "separate" when attached to people who are romantically involved is usually applied to the dissolution of a marriage. Mother and Father were never married or even cohabitating. N.T. at 35. Nonetheless, we find the trial court's usage to be legitimate under the circumstances.

■ Whether or not the parents were separated is not the most important question, however, because "[t]he guiding polestar in deciding all cases involving a child, including whether grandparent visitation rights should be awarded is the best interests of the child." *Hughes v. Hughes*, 316 Pa.Super. 505, 508–09, 463 A.2d 478, 480 (1983). *See also Commonwealth ex. rel. Zaffarano v. Genaro*, 500 Pa. 256, 261, 455 A.2d 1180, 1182 (1983); *Bucci v. Bucci, supra,* 351 Pa.Super. at 460, 506 A.2d at 439; *Commonwealth ex rel. Miller v. Miller, supra,* 329 Pa.Super. at 253, 478 A.2d at 453. In a grandparent visitation case, the grandparent has the burden to prove that it is in the child's best interest to have "some time" with the grandparent. *Bucci, supra,* 351

Pa.Super. at 460, 506 A.2d at 440. The burden is lower than in a custody or partial custody situation since the amount of time that the child would be away from his parent is less.

In the present case, appellee has met her burden. She has demonstrated her love for Patrick and her desire to have some relationship with him. The policy in this Commonwealth has been that grandparent visitation is preferred unless there are overriding factors such as intense animosity between the adults involved. *See, Bucci, supra,; Suroviec, supra,; Miller, supra.* We have also recognized the visitation rights of a father of a child born out of wedlock. *See, Commonwealth ex rel. Peterson v. Hayes,* 252 Pa.Super. 487, 381 A.2d 1311 (1977). If we recognize the father's connection to the child and allow him to visit, the next logical extension is to allow the paternal grandparents visitation as well. *See generally, F.H. v. K.L.M.,* 740 P.2d 1006, 1007 (Colo.App.1987) (paternal grandparents of illegitimate child whose father's paternity is not questioned have standing to request visitation with child); *Matter of Adoption of Donald U,* 482 N.Y.S.2d 74, 105 A.D.2d 875 (1984) (paternal grandparent allowed to visit illegitimate child after his adoption went through).

The appellant was unable to produce concrete evidence that there would be any detriment to Patrick from spending time with appellee. Mother and Maternal Grandmother both testified that they did not want appellee to have visitation with Patrick because someday Mother hoped to be married and have more children. They voiced their concern that Patrick would be singled out because he had a different father and grandmother, and that would be confusing. N.T. at 45, 62, 85, and 115–16. This reasoning is not compelling. Mother is not dating anyone let alone engaged or pregnant with another child. Her concern is about a hypothetical event sometime in the future.

Appellant and her mother also expressed concern that after his prison term was over, Father would return to appellee's home. Appellee, in fact, testified that this would

be the case. N.T. at 28. Appellant is worried that Father has a violent personality and that would not be positive for Patrick. Again, this concern is about an event that will take place in the future. Visitation orders, such as the one currently before us, are open orders. If any of the concerns that Mother expressed do occur, she can petition the court to reconsider the order. Likewise, sometime in the future, appellee or Father could do the same. *See, e.g., S.H. v. B.L.H.,* 392 Pa.Super. 137, 572 A.2d 730, 732 n. 1 (1990) (do not need change of circumstances to petition to modify visitation terms of custody order); *Martin v. Martin,* 386 Pa.Super. 328, 562 A.2d 1389 (1989).

We must compare Mother's theoretical concerns with the current benefits that Patrick would gain by knowing his grandmother. Having one more adult to love and care for him can not be viewed as against his interests. In *Miller, supra,* this court stated:

> [s]ince the polestar of our analysis is the best interests and welfare of the child, we cannot overlook the ultimate result that grandparent visitation is beneficial for a child's development in that it establishes family ties which can continue long beyond childhood.

*Miller* 329 Pa.Super. at 257, 478 A.2d at 455. Fostering strong and healthy family relationships is important for all children, and may be even more so for a child like Patrick who is unable to know his father. His emotional and intellectual development could be enhanced through his growing relationship with both grandmothers. It is inconsequential whether appellee can give Patrick many material objects as long as she is willing to continue her show of love and affection. These things are surely more important for a developing child. Therefore, Paternal Grandmother will be permitted to visit with Patrick pursuant to the lower court order.

Order granting visitation to appellee affirmed.