660 A.2d 111

**Frances RIGLER and Ronald C. Rigler, Appellants,**

v.

**Marcelle Bulgarino TREEN and Paul H. Treen.**

Superior Court of Pennsylvania.

Argued Jan. 12, 1995.

Filed June 15, 1995.

Herbert R. Weiman, Philadelphia, for appellants.

Marilyn L. Walder, Philadelphia, for appellees.

Before BECK, KELLY and HOFFMAN, JJ.

BECK, Judge:

The issue is whether appellants, the parents of a biological father whose parental rights have been involuntarily terminated, were properly denied visitation with their grandson, who has been adopted by his stepfather. We find that the trial court correctly determined that such visitation would not be in the child's best interest and we therefore affirm.

R.B., the child whose custody is at issue, was born on November 15, 1989. His biological parents, appellee Marcelle Bulgarino (now known as Marcelle Bulgarino Treen) and Ronald C. Rigler, Jr., never married and have no ongoing relationship. In March, 1991, Marcelle Bulgarino married appellee Paul H. Treen. In May, 1991, she filed a petition to terminate the biological father's parental rights involuntarily under 23 Pa.C.S. § 2511(a)(1). The petition was granted in September, 1991, and upheld on appeal in January, 1993. Shortly thereafter, R.B. was adopted by Paul Treen. Marcelle and Paul Treen also have a younger daughter, Maria.

Appellants Frances and Ronald C. Rigler, R.B.'s biological paternal grandparents, initially were granted temporary visitation while their son appealed the trial court's order involuntarily terminating his parental rights. The order permitted the Riglers to visit with R.B. in his mother's presence for two hours once a month.

In April, 1993, shortly after receiving notification that the termination of parental rights had been affirmed by this court, Marcelle Treen filed a petition to terminate the Riglers' visitation rights. After a hearing at which both the Riglers and the Treens testified and introduced the testimony of witnesses, including psychological experts, the trial court determined that to allow the Riglers ongoing visitation rights would not be in R.B.'s best interest and would interfere with the parent/child relationship. The court therefore rescinded the temporary visitation order and denied the grandparents' petition for visitation. This timely appeal followed.

The Riglers' petition for visitation is based upon their special status as grandparents. Section 5301 of the Domestic Relations Code declares that it is the public policy of this Commonwealth, when in the best interest of the child, to assure continuing contact of the child with grandparents when a parent is deceased, divorced or separated. 23 Pa.C.S. § 5301. In furtherance of this policy, three statutory sections have been enacted which both create a cause of action for grandparent visitation [1] and designate the parties who may bring suit under their provisions. See Hill v. Divecchio, 425 Pa.Super. 355, 625 A.2d 642 (1993).

Section 5311 of the Domestic Relations Code applies where a parent of the child is deceased.[2] Section 5312 applies in cases of separation or divorce.[3] Section 5313 covers grandpar-

1. For purposes of this discussion, the term "visitation" will be used to describe both visitation in the parent's presence and partial custody.

2. Section 5311 provides:

§ 5311. When parent deceased

If a parent of an unmarried child is deceased, the parents or grandparents of the deceased parent may be granted reasonable partial custody or visitation rights, or both, to the unmarried child by the court upon a finding that partial custody or visitation rights, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the deceased parent and the child prior to the application. 23 Pa.C.S. § 5311.

3. Section 5312 provides:

ents with whom the child has resided for 12 months or more.[4] Each of these statutory provisions confers, upon a grandparent to whom it applies, standing to petition for visitation and/or partial custody.

The Riglers claim that they have standing to seek visitation with R.B. under Section 5312. The trial court did not expressly address the issue of standing, but in considering the merits of the Riglers' petition apparently concluded that they had standing under one or more of the above statutory sections. We find no error in this conclusion.

First, we note that although the Riglers' son and R.B.'s mother were never married, the courts of this Commonwealth have held that Section 5312 allows biological grandparents to seek visitation even with a grandchild born out of wedlock

§ 5312. **When parents' marriage is dissolved or parents are separated**

In all proceedings for dissolution, subsequent to the commencement of the proceeding and continuing thereafter or when parents have been separated for six months or more, the court may, upon application of the parent or grandparent of a party, grant reasonable partial custody or visitation rights, or both, to the unmarried child if it finds that visitation rights or partial custody, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the party and the child prior to the application.

23 Pa.C.S. § 5312.

Significantly, while section 5311 provides that visitation and/or partial custody may be granted only to a parent or grandparent *of the deceased parent,* section 5312 permits such rights to be granted to the parent or grandparent *of a party.* Thus, this court has held that section 5312 allows any grandparent, even a grandparent whose own child is the custodial parent, to seek visitation with a grandchild. *Hill v. Divecchio, supra.*

4. Section 5313 provides:

§ 5313 **When child has resided with grandparents.** If an unmarried child has resided with his grandparents or great-grandparents for a period of 12 months or more and is subsequently removed from the home by his parents, the grandparents or great-grandparents may petition the court for an order granting them reasonable partial custody or visitation rights, or both, to the child. The court shall grant the petition if it finds that visitation rights would be in the best interest of the child and would not interfere with the parent-child relationship.

23 Pa.C.S. § 5313.

538

where the child's parents' relationship has ended. *Bishop v. Piller*, 399 Pa.Super. 52, 581 A.2d 670 (1990), *affirmed*, 536 Pa. 41, 637 A.2d 976 (1994).

■ Section 5312, and indeed the entire statutory scheme relating to grandparent visitation, is silent regarding the standing of grandparents like the Riglers, whose child's rights with respect to the grandchild have been involuntarily terminated. However, Section 5314 of the statute does address the effect upon a grandparent's rights of the grandchild's adoption.[5] Under that section, a grandparent's standing is cut off only if the child is adopted by third parties who are not the stepparents or grandparents of the child. *Suroviec v. Mitchell*, 347 Pa.Super. 399, 500 A.2d 894 (1985). Moreover, Section 5314 preserves grandparental visitation rights following stepparent or grandparent adoption not only in cases where the biological parent has died, but also in cases of separation or divorce. Any stepparent or grandparent adoption where the biological parent is alive necessarily involves the termination, either voluntarily or involuntarily, of the biological parent's rights. Since the grandparents' rights survive such an adoption, it follows that the termination of the biological parent's rights alone does not cut off the visitation rights of the biological grandparents.

Further, under the explicit provisions of Section 5314, the Riglers' standing was not affected when Paul Treen, R.B.'s stepfather, adopted him. We therefore conclude that the Riglers did have standing to seek visitation with R.B., and that the trial court properly considered their petition on its merits.

5. Section 5314 provides:

**§ 5314 Exception for adopted children**

Sections 5311 (relating to when parent deceased), 5312 (relating to when parents' marriage is dissolved or parents are separated) and 5313 (relating to when child has resided with grandparents) shall not apply if the child has been adopted by a person other than a stepparent or grandparent. Any visitation rights granted pursuant to this section prior to the adoption of the child shall be automatically terminated upon such adoption.

23 Pa.C.S. § 5314.

In undertaking that consideration, the trial court recognized that the rights given to grandparents by these statutory sections are not absolute. While the statutory scheme permits grandparents to sue for visitation in specified situations, the court is authorized to grant such rights only if it finds that visitation would be in the child's best interest and would not interfere with the parent-child relationship. 23 Pa.C.S. §§ 5311, 5312, 5313.

In considering whether visitation with the Riglers would be in R.B.'s best interest and would not interfere with the parent/child relationship, the trial court carefully reviewed the testimony of the parties, their fact witnesses and both parties' experts. The court made the following assessment:

> The record clearly shows that the relationship between Marcelle and the Riglers is an antagonistic one. Marcelle testified that Mrs. Rigler had a very hostile attitude toward her. She had been in Mrs. Rigler['s] house only a few times. Once Mrs. Rigler would not invite her into her house. On another occasion, Mrs. Rigler cursed her and called her a "bitch." During the bridal shower that was held in the Riglers [sic], Mrs. Rigler refused to join the people in the room and take pictures together with Marcelle and other people. She presented her bridal gifts in a heavy trash bag. Marcelle testified that "whenever [she] was in [Mrs. Rigler's] company, she [Mrs. Rigler] made it obvious that she didn't like [her] and didn't want [her] around." This hostility between Marcelle and Mrs. Rigler created enormous anxiety in Marcelle when she had to send Richie to the Riglers for visitation. Paul Treen, Marcelle's husband, testified quite convincingly as to her behavior surround [sic] those visitations: "She gets all, she gets nervous. She gets uptight. She gets full of stress." The parents sometimes got into arguments about those visits in front of [R.B.].

Trial Court Opinion at 7–8 (citations to transcript omitted). Based on these factual findings the court made the following conclusions:

The Court is convinced that the relationship between Marcelle and the Riglers would have an adverse effect on the child if the Riglers are permitted to have visitation with him. Elaine Frank, MSW [the Treens' expert witness], testified extensively on this point. She stated that granting the Riglers visitation rights would have "the effect of making Marcelle feel totally intimidated and uncertain of what rights she had, whether she had any rights." Under such circumstances, Ms. Frank believed that "it is better for his [R.B.'s] growth and development that his primary relationship stay with mother, father, sibling and the people that they are happy with." By so doing, she continues, the child will be "more stable, more secure person than to be torn apart by what's going on here now." The Court finds that her opinion is based on her careful study of the parties involved and her extensive expertise in this area. The Court concludes that permitting the Riglers' visitation rights to continue would not be in [R.B.'s] best interest and it would interfere with the relationship between [R.B.] and his parents.

Trial Court Opinion at 8 (citations to transcript omitted). Accordingly, the Riglers were denied visitation on the grounds that it would not be in the child's best interest and would interfere with the parent-child relationship.

■ The Riglers raise two arguments in challenging the trial court's determination. First, they contend that the court erred in finding that grandparent visitation was not in the child's best interest and that such visitation would interfere with the parent-child relationship. Second, they argue that the trial court erred in relying upon the expert testimony of Elaine Frank, MSW, because she was not adequately qualified to offer an opinion on the issue of grandparent visitation in a stepparent adoption and because the trial court gave too much weight to her testimony.

In considering these arguments, we are cognizant that "The guiding polestar in deciding all cases involving a child, including whether grandparent visitation rights should be awarded, is the best interests of the child." *Hughes v.*

*Hughes,* 316 Pa.Super. 505, 508–09, 463 A.2d 478, 480 (1983). *See also Commonwealth ex rel. Zaffarano v. Genaro,* 500 Pa. 256, 261, 455 A.2d 1180, 1182 (1983); *Bucci v. Bucci,* [351 Pa.Super. 457, 460, 506 A.2d 438, 439 (1986) ]; *Commonwealth ex rel. Miller v. Miller,* [329 Pa.Super. 248, 253, 478 A.2d 451, 453 (1984) ]. In a grandparent visitation case, the grandparent has the burden to prove that it is in the child's best interest to have "some time" with the grandparent. *Bucci, supra,* 351 Pa.Super. at 460, 506 A.2d at 440. The burden is lower than in a custody or partial custody situation since the amount of time that the child would be away from his parent is less.

*Bishop v. Piller, supra* at 56, 581 A.2d at 672. Moreover, as in any other case involving custody, partial custody or visitation of children,

[t]he scope of review of [the] appellate court ... is of the broadest type; the appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*McMillen v. McMillen,* 529 Pa. 198, 202, 602 A.2d 845, 847 (1992) (citations omitted).

The Riglers argue that the trial court failed to give adequate consideration to the best interest of the child because it focused on the antagonistic relationship between the Riglers and Marcelle Treen rather than on the relationship between the Riglers and R.B. They argue that because no evidence was presented to suggest that the visitations pursuant to the temporary order were detrimental to R.B., the court abused its discretion in terminating the visitations. Further, they

argue that visitation rights of two hours per month, as authorized by the temporary order, were so minimal that they could not interfere with the parent-child relationship. These arguments are unpersuasive.

Contrary to the Riglers' assertions, the trial court did not focus solely on the relationship between the Riglers and Marcelle Treen. Rather, the court's primary concerns were the negative effect that the relationship has upon Marcelle Treen's ability to parent effectively and the effect that the tension surrounding the visitations has upon a young child like R.B. The record in this matter amply supports the trial court's findings on these issues. Both the Treens and Ms. Frank, their expert witness, testified at length regarding the negative effects of Mrs. Rigler's domineering personality upon Marcelle Treen, the extreme anxiety that even the limited visitations pursuant to the temporary order had produced in Marcelle Treen, and the tension that disrupted the Treen family as a result. Both of the Treens testified that the Riglers had repeatedly expressed their intention to increase their visitations to partial custody, regardless of the Treens' wishes in the matter. This conduct by the Riglers increased Marcelle's feeling that she does not have control over her son and that despite her efforts to establish a new family unit by Paul Treen's adoption of R.B., the Treen family will never be able to function normally, without outside interference.[6] Marcelle Treen's distress over this situation was apparent from her testimony, and we find no abuse of discretion in the trial court's conclusion that the degree of anxiety and emotional

6. In light of the Riglers' conduct, Marcelle Treen's fears cannot be said to be entirely groundless. Although she may overreact to Mrs. Rigler's strong personality, Marcelle Treen's concerns are not completely hypothetical. Moreover, her reaction to the visitations has caused a present, actual effect upon the Treen family. These facts distinguish this case from *Bishop v. Piller, supra* (grandparent visitation properly granted where mother's concerns about visitation were based on hypothetical events sometime in the future). Moreover, the trial court found Marcelle Treen's testimony regarding the nature and source of the hostile relationship between the Treens and the Riglers credible. The Riglers' reliance upon *Bucci v. Bucci, supra,* 351 Pa.Super. 457, 506 A.2d 438, where this court affirmed the trial court's finding that any hostility between the parties had been created by the child's mother, is thus misplaced.

disturbance experienced by R.B.'s mother would interfere with her parenting and would cause distress to the child himself if visitations with the Riglers were to continue. In light of these factual conclusions, we will not disturb the trial court's legal conclusion that visitation would not be in R.B.'s best interest.

Similarly, we find no merit in the Riglers' contention that the minimal level of visitation authorized by the temporary order could have been continued without interfering with the parent-child relationship. As noted above, the record supports the trial court's finding that even the two hours per month that the Riglers had spent with R.B. pursuant to the temporary order had a negative effect on Marcelle Treen's relationship with R.B. and on the atmosphere within the Treen family.[7] The trial court properly concluded that the potential benefits of such minimal contact were outweighed by the potential harm to the child resulting from the tension and anxiety surrounding the visits.

The Riglers' second claim centers upon the trial court's consideration of the testimony of Elaine Frank, MSW, a social worker who specializes in counseling adoptive families. The Riglers claim that Ms. Frank, who testified on behalf of the Treens, should not have been qualified as an expert because she lacked sufficient experience in the specific area of grandparent visitation following stepparent adoption. Further, they argue that the trial court erred in giving weight to Ms. Frank's testimony and report because she had not met with the Riglers or questioned R.B. about his relationship with them. Rather, the Riglers claim, the trial court should have given greater weight to the testimony of their expert witness, Robert Tanenbaum, Ph.D., a psychologist who stated that he had previously testified in cases involving grandparent visita-

7. This finding distinguishes this case from *Suroviec v. Mitchell, supra,* 347 Pa.Super. 399, 500 A.2d 894, and *Bucci v. Bucci,* supra, on which the Riglers rely. In both of those cases, limited visitation of a few hours monthly or quarterly was permitted. However, in *Suroviec,* there was no particular hostility among the parties that might cause the visitation to interfere with the parent-child relationship, while in *Bucci,* there was no assertion that the claimed hostility between the parent and the grandparents caused the visits to impact negatively upon the relationship between the parent and the child.

tion and natural parent adoption and who met briefly with the Treens as well as the Riglers and R.B.

■ Our standard of review of this claim is limited. Whether a particular witness qualifies as an expert is a matter within the discretion of the trial court. *Ruzzi v. Butler Petroleum Company,* 527 Pa. 1, 10, 588 A.2d 1, 5 (1991). A decision on competency of an expert will not be reversed on appeal absent a clear abuse of discretion. *Id.* *Miller v. Brass Rail Tavern,* 434 Pa.Super. 383, 385, 643 A.2d 694, 695 (1994). Further, the weight to be given to an expert's testimony is for the factfinder. *In re Glosser Bros., Inc.,* 382 Pa.Super. 177, 196, 555 A.2d 129, 139 (1989). In reviewing the trial court's exercise of its discretion on this issue, we also keep in mind that the law of Pennsylvania "imposes a liberal standard for qualification of an expert, allowing a witness to testify as an expert if he has any reasonable pretension of specialized knowledge on the subject under investigation." *In re Glosser Bros., Inc., supra* at 196, 555 A.2d at 138–39.

Applying the above standards to this case, we have no difficulty in concluding that the trial court's qualification of Ms. Frank as an expert was not an abuse of discretion. Although Ms. Frank admitted that she had not previously handled a case in which a biological grandparent sought visitation following a stepparent adoption, her education and experience in working with adoptive families of all types gave her the necessary background to advise the court regarding the likely effect of grandparent visitation upon the Treen family. Moreover, we cannot agree with the Riglers' contention that the trial court abused its discretion in according greater weight to Ms. Frank's opinion than to that of the Riglers' expert, Dr. Tanenbaum. The court recognized Dr. Tanenbaum's distinguished credentials and his previous testimony in cases involving grandparent visitation following stepparent adoption. However, the court found that Dr. Tanenbaum, although he briefly interviewed the Treens, misunderstood their feelings about R.B.'s relationship with the Riglers and overstated their willingness to have the Riglers' visits

continue. In light of these misconceptions regarding the Treens' attitudes towards visitation by the Riglers, the trial court concluded that Dr. Tanenbaum's opinion should be given less weight than that of Ms. Frank, who, despite not having met with the Riglers, had a superior understanding of the atmosphere within the Treen family and the effects of that atmosphere upon R.B. We cannot conclude that the trial court abused its discretion in considering Ms. Frank's thorough knowledge of the delicate dynamics of this adoptive family more important to his decision than Dr. Tanenbaum's previous experience with other families in a similar situation.

Our thorough review of the record and the parties' arguments persuades us that the trial court gave careful consideration to the child's best interest in making its decision in this difficult case. We find no abuse of discretion in the denial of the Riglers' petition for grandparent visitation.

Order affirmed.