J-A31026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| C.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | No. 854 MDA 2015 |
| | : | |
| L.B., B.B. | : | |
|    Appellants | : | |
| J.G. | : | |

Appeal from the Order Entered April 20, 2015
In the Court of Common Pleas of York County
Civil Division, at No. 2014-FC-512-03

BEFORE: PANELLA, J., LAZARUS, J., and PLATT[*], J.

MEMORANDUM BY PANELLA, J.      **FILED FEBRUARY 05, 2016**

L.B. (Mother) and B.B. (Stepfather) (collectively, Appellants) appeal the order of the Court of Common Pleas of York County, entered April 20, 2015, that awarded partial physical custody of G.G. (Child) to Mother's former partner, C.B. The order granted C.B. one weekend per month from Friday to Sunday and reduced her partial physical custody to one Saturday per month beginning in November 2015. We affirm.

The record supports the following recitation of the facts of this case. Child was born to Mother and Father in May 2007. Mother and Father separated shortly after Child's birth. Upon separating, Mother and Father entered into a stipulated order of custody by which Mother exercised primary physical custody and Father, as he was in the military at the time and

_____

[*] Retired Senior Judge assigned to the Superior Court.

1

stationed out of state, enjoyed partial physical custody as the parties might agree.

Mother met C.B. in October 2007; they began living together as a family in February 2008, when Child was just eight months old. C.B. participated in Child's medical appointments, helped select Child's schools and autism treatment, and communicated with Child's teachers and mental health professionals. Mother included C.B. in communications to and from teachers and in meetings with teachers, even following separation.

C.B. was with Mother when Child's pediatrician referred Child for an autism evaluation. C.B. contacted the specialists to set up that evaluation and participated in the evaluation. When Child was diagnosed as autistic, C.B. set up further services and arranged for therapy.

Child has a relationship with C.B.'s extended family. He refers to C.B.'s mother as "Nina," her father as "Pappy" or "Pap," and her sisters and brothers as "aunt" and "uncle."  R. 66a-67a; S.R. 6. Mother, C.B. and Child vacationed with each other's extended families. C.B. cared for Child when Mother worked evenings and, if both parties were working, family members would babysit Child if Child were not at daycare. C.B.'s mother's family acted as emergency contacts for Child. C.B. helped with such tasks as changing diapers and transporting Child to and from daycare and school.

C.B. testified that she accompanied Mother and Child on doctor visits and took Child to the doctor by herself, at Mother's request. Both Mother and C.B. worked and contributed financially to the household.

C.B. received Mother's Day cards from Child and Mother. For Christmas 2011, Mother gave C.B. a book with pictures of C.B. and Child "Dedicated to my mommy who is always there for me. I love you forever, Booey. Love, your baby, [G.G.]." N.T. 3/24/15 at 27.

C.B. and Mother lived together with Child for four and one half years. After they separated in August 2012, C.B. remained involved in Child's life, picking him up from school every Wednesday and keeping him until 8:00 p.m. or so, and every other weekend from Friday evening to Sunday evening. C.B. and Mother also shared holidays. Following separation, Mother gave C.B. a Christmas card from a child to his mother on behalf of Child. C.B. and Mother continued regular communication regarding Child until January 2014, when Mother abruptly discontinued C.B.'s periods of custody.

B.B. (Stepfather) moved in with Mother and Child in September or October 2012. Mother married Stepfather in June 2013. C.B. entered into a relationship with her current fiancée in August 2013; they began residing together in May 2014.

C.B. filed her custody action on March 20, 2014. Mother and Stepfather filed preliminary objections to C.B.'s standing. A conciliation conference resulted in an interim custody order pending trial, by which C.B.

exercised partial physical custody one weekend per month at Mother's discretion. Following a hearing on Mother's preliminary objections, the trial court entered an order overruling those objections and consolidating C.B.'s action with one filed by Father. The trial court entered the order that is the subject of this appeal following a trial held on March 24 and 27, 2015. According to that order, C.B. initially exercised custody of Child one weekend per month, from Friday to Sunday. Beginning in November 2015, the order reduced C.B.'s custodial time to one Saturday per month. This timely joint appeal followed.

Appellants present the following questions for our consideration.

I. Whether the trial court erred in concluding that [C.B.] had standing as *in loco parentis*[?]

II. Whether the [trial] court erred in continuing the contact of [Child] with [C.B.] even though there was expert testimony showing that it would be detrimental in the long run for [Child][?]

III. Whether the trial court erred in following the advice of [C.B.'s] expert witness who never saw [Child][?]

Appellants' Brief at 4.

Our scope and standard of review is as follows.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or

inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted).

We have stated that

the discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).

We begin by noting that the trial court entered a comprehensive opinion shortly after the entry of the order complained of here. In that opinion, the trial court discussed each of the sixteen statutory custody factors in 23 Pa.C.S.A. § 5328. The trial court also entered a supplemental opinion in which it discussed Appellants' issues complained of on appeal.

Appellants do not specifically challenge any of the trial court's findings relative to the sixteen custody factors. Rather, they claim that an analysis of those issues "was not appropriate to settle the custody issues between biological parents and an *in loco parentis* individual like [C.B.]." Appellants' Brief, at 14. This argument presents a pure question of law. "As with all questions of law, the appellate standard of review is de novo and the appellate scope of review is plenary." ***B.K.M. v. J.A.M.***, 50 A.3d 168, 172 (Pa. Super. 2012) (citation omitted).

Our Supreme Court has explained that

> [t]he phrase 'i*n loco parentis*' refers to a person who puts oneself [sic] in the situation of a lawful parent by assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties. The rights and liabilities arising out of an *in loco parentis* relationship are, as the words imply, exactly the same as between parent and child.

***Peters v. Costello***, 891 A.2d 705, 710 (Pa. 2005) (citation omitted).  The Court added that

> [t]he *in loco parentis* basis for standing recognizes that the need to guard the family from intrusions by third parties and to protect the rights of the natural parent must be tempered by the paramount need to protect the child's best interest. Thus, while it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent. Where such a relationship is shown, our courts

recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objections.

*Id*., at 711 (citation omitted).

In support of their first claim, that C.B. did not stand *in loco parentis* to Child, Appellants argue that

[t]he trial court erred when it held that [C.B.] adequately held an *in loco parentis* status to [Child] in this case. Specifically, none of the factors relied upon by the trial court singly or in combination supported the [trial] court's determination that [C.B.] stood *in loco parentis* to [Child].

Instead, the evidence clearly shows that [C.B.] was Mother's partner. She never discharged parental duties or assumed a stature like that of a parent. While Mother did not deny that [C.B.] accompanied her to [Child's] doctor appointments and school appointments, she did deny that she attended such appointments as a parent. Rather she did so as Mother's partner, not as [Child's] parent.

Appellants' Brief, at 9 (citation to the record omitted).

Before we begin our analysis, we are constrained to point out that Appellants set a high bar to permitting a person to assume the status of *in loco parentis*. This is what they say about Stepfather's status in Child's life today:

[Stepfather] testified that he too accompanies Mother to parent/teacher conferences and for the most part, picks [Child] up every day from school. He further testified that [Child] calls him "Dad," and that [Child] has established [a] relationship with his parents and calls them "Grandma["] and ["]Grandpa." Mother testified that Stepfather's relationship with [Child] is now identical to that of [C.B.'s] relationship, and that Stepfather currently does everything [C.B.] testified to doing for and with

7

[Child]. Stepfather actually does more for [Child] than [C.B.] as he is helping to substantially supporting [sic] Mother and [Child] financially (Father does pay child support for [Child] to Mother), and he and Mother now have a family unit that includes Child's half-brother.

If we were to follow the trial court's reasoning for granting [C.B.] standing, Stepfather would also stand *in loco parentis* to [Child] and would ultimately have standing to file for custody rights of [Child] if he and Mother were to separate or divorce.

Appellants' Brief, at 11-12.

According to the Appellants, Stepfather, who has been living with Mother and Child for more than three years, is married to Mother, has been, according to Mother, caring for Child with her, and is the father of Child's half-brother, does not stand *in loco parentis* to Child. We are left to wonder, then, what would Appellants require of someone before they would permit them that status. They do not say. They only say that C.B., and even Stepfather, have not done enough.[1]

Appellants do not tell us what they mean, above, by "the factors relied upon by the trial court." The only "factors" the trial court relies on are the sixteen custody factors, and those are not relevant to the question of establishing *in loco parentis* status. They apply only to persons who, on whatever basis, have standing to seek custody of a child. The trial court did

---

[1] We caution the reader that we do not hold that C.B. and Stepfather have done, by the conduct described above, enough to be considered *in loco parentis*, we only seek to bring attention to Appellants' standard.

not address the question of C.B.'s standing in its opinion of April 20, 2015, but it did address it in its supplemental opinion of May 28, 2015.

> In this matter, the [c]ourt found that the evidence established that [C.B.] had [a] parent-like relationship with [Child] and preformed parental duties on his behalf. Testimony established that [C.B.] shared in [Child's] care during her relationship with Mother from approximately October of 2007 until August of 2012. Testimony established that [C.B.] provided childcare when Mother was at work and attended [Child's] doctor appointments and educational meetings. [C.B.] further testified that Mother encouraged her to have a mother-type bond with [Child]. Evidence established that Mother made [C.B.] cards on Mother's Day and referred to her as "Mommy." Additionally, [C.B.] testified that, even following their separation, she continued to assist Mother in providing care for [Child] until January of 2014. In light of this testimony, the [c]ourt believes that [C.B.] has *in loco parentis* standing to pursue custody in this matter.

Trial Court Supplemental Opinion 5/28/15, at 2.

Our examination of the record reveals that it supports the trial court's findings, and that those findings, examined in the light of our law, are sufficient to support the trial court's determination that C.B. stands *in loco parentis* to Child. The trial court did not abuse its discretion in making that determination. Appellants' first claim of error is without merit.

In their second issue, whether the trial court erred in permitting continuing contact between Child and C.B., Appellants first complain that the trial court erred when it considered C.B. as a party equal to Mother and Father when it conducted its custody analysis.

> In its opinion, the trial court provided an analysis of the custody factors with respect to three different individuals, Mother, Father, and [C.B.]. Specifically, it engaged in an exercise where

9

it first listed the custody factors, then outlined relevant testimony as it related to that factor, and lastly concluded with a statement as to which individual that factor weighed in favor of, either Mother, Father, and/or [C.B.].

That type of analysis was overbroad and not applicable to an *in loco parentis* individual such as [C.B.]. While this type of analysis was completely appropriate to address the custody issue between Mother and Father, it was not appropriate to settle the custody issues between biological parents and an *in loco parentis* individual like [C.B.]. In essence, the trial court elevated [C.B.] to the status of a natural parent in determining the merits of the custody dispute.

Appellants' Brief, at 13-14.

Appellants badly misread the law. Once the trial court determined that C.B. stood *in loco parentis* to Child, her status as a third party disappeared, and the trial court was bound to consider her relationship to Child, "exactly the same as between parent and child." **Peters**, 891 A.2d at 710 (citation omitted). The trial court did not abuse its discretion when it considered C.B. as on an equal footing with Mother and Father in its custody analysis.

In the second part of their second issue, the Appellants complain, that "had the trial court conducted the proper analysis, it would have found that the evidentiary record does not support a finding of custody rights for [C.B.]." Appellants' Brief, at 14. In support of this claim, Appellants maintain, "the trial court appears to completely ignore the testimony of Dr. Peter Thomas, a clinical psychologist and a court-recognized expert in custody evaluations." **Id**. We will discuss this issue with Appellants' third issue, whether the trial court abused its discretion in relying on the expert

10

testimony of clinical psychologist, Melinda Eash, who had never met Mother, Father, or Child, as they are interrelated.

"[T]he weight to be given to an expert's testimony is for the factfinder." ***Rigler v. Treen***, 660 A.2d 111, 116 (Pa. Super. 1995) (citation omitted). Appellants argue that the trial court abused its discretion in the way that it considered the testimony of Dr. Thomas and Ms. Eash by reexamining their testimony in light of the evidence and asking us to reach a different conclusion. This we may not do. The credibility of witnesses and the weight to be given to expert testimony are for the trier of fact. ***See S.M. v. J.M.***, 811 A.2d 621, 623 (Pa. Super. 2002); ***Rigler***.

We quote the trial court's analysis of the testimony of Dr. Thomas and Ms. Eash, with approval.

> After thorough review of the testimony and evidence in this matter, the [c]ourt concluded that [C.B.] played an important role in [Child's] life and should continue to have a relationship with [Child] in a diminished capacity. Mother's expert, Dr. Peter Thomas, performed a custody evaluation for this matter and testified that he believed it would be in the best interest of [Child] if [C.B.'s] time with [Child] was gradually reduced and eventually terminated. Dr. Thomas reasoned that [Child] has a difficult time transitioning, and that moving between three (3) residences was too overwhelming for [Child]. [C.B.'s] expert, Melinda Eash, spoke with [C.B.] and reviewed Dr. Thomas' evaluation and the home study completed on [C.B.] in order to render her professional opinion. Ms. Eash testified that she questions whether or not it is in the best interest of [Child] to completely remove [C.B.] from his life. Ms. Eash further explained that it would be very significant to [Child] to remove a main caregiver from his life. Ms. Eash stated that she believes that [C.B.'s] role will eventually need to be minimized but would not recommend complete termination of her time with [Child].

11

> The [c]ourt agrees with this conclusion. In the Final Order of Custody, the [c]ourt slowly phased out [C.B.'s] time with [Child] from two (2) overnights per month to one (1) day per month. The [c]ourt believes that spending one (1) day per month with [C.B.] on a Saturday will not be unduly disruptive to [Child's] school and will provide more stability in [Child's] overnight schedule as he will only be sleeping at two (2) different residences rather than three (3) residences. As such, the [c]ourt believes that continuing contact between [Child] and [C.B.] will not be detrimental to [Child].

Trial Court Supplemental Opinion 5/28/15, at 3.

We also quote, with approval, the trial court's explanation of its analysis of the testimony of Ms. Eash.

> The [c]ourt found the testimony of [C.B.'s] witness, Melinda Eash, to be compelling and believes her opinion[,] based primarily on the report of Dr. Thomas[,] to be satisfactory. Additionally, [C.B.'s] expert witness was not the only basis for the [c]ourt's decision to maintain contact between [Child] and [C.B.]. The [c]ourt considered the testimony of all witnesses and evidence prior to concluding that [C.B.]'s relationship was important to [Child] and should be maintained.

*Id*., at 4.

The record supports the trial court's determination to reduce gradually Child's time with C.B. The trial court did not abuse its discretion by refusing to follow fully the recommendation of Dr. Thomas, any more than it abused its discretion by relying on the testimony of Ms. Eash.

Our examination of the record in this matter reveals that the record supports the trial court's findings that C.B. stands *in loco parentis* to Child and that a gradual reduction in C.B's periods of physical custody of Child, rather than a sudden termination, is in Child's best interests.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/5/2016