637 A.2d 976

**Darlene A. BISHOP and Norman S. Bishop, Appellees,**

v.

**Lisa Marie PILLER, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1992.

Decided Feb. 23, 1994.

42

William C. Wickkiser, James B. Martin, Allentown, for appellant.

James L. Heidecker, Jr., Allentown, for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

PAPADAKOS, Justice.

The issue in this case is whether or not a paternal grandparent of a child born out of wedlock may be awarded visitation

rights when the child's father has no legal relationship with the child or the mother of the child. This question requires us to apply the Grandparents' Visitation Act, 23 Pa.C.S.A. §§ 5311–5314.

This proceeding is based on the following events. Appellant Lisa Piller, the mother, met Norman Bishop, the father, late in 1987 and they began dating early in 1988. She soon became pregnant and gave birth to Patrick Piller on December 23, 1988. Father and mother never cohabited and never married. The relationship was unstable and the father was physically abusive toward the mother. Norman Bishop was listed on Patrick's birth certificate so the father's medical insurance would cover the costs of the birth. Although Bishop has never acknowledge paternity by filing a declaration with the state department of health pursuant to 23 Pa.C.S.A. § 8302, it is not disputed that he is Patrick's father. Five months after Patrick was born, the father was incarcerated on an aggravated assault conviction. The child has lived with his mother since birth and she has provided virtually all of his support. The father and Darlene Bishop, Patrick's paternal grandmother, have given gifts to the child.

In late 1989, Patrick's father and grandmother filed a custody petition seeking, *inter alia*, visitation rights for the grandmother pursuant to the Grandparents' Visitation Act. Hearings were held before a custody hearing officer and a common pleas court judge, the Honorable John E. Backenstoe, culminating in the entry of an order in the Court of Common Pleas of Lehigh County, which confirmed custody in the mother and granted two hours of visitation to the grandmother every Sunday. The mother appealed to the Superior Court, which affirmed the judgment of the trial court, 399 Pa.Super. 52, 581 A.2d 670. The governing statute in question provides, in part:

### § 5311. When parent deceased

If a parent of an unmarried child is deceased, the parents or grandparents of the deceased parent may be granted reasonable partial custody or visitation rights, or both, to the unmarried child by the court upon a finding that partial

custody or visitation rights, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the deceased parent and the child prior to the application.

§ 5312. **When parents' marriage is dissolved or parents are separated**

In all proceedings for dissolution, subsequent to the commencement of the proceeding and continuing thereafter or when parents have been separated for six months or more, the court may, upon application of the parent or grandparent of a party, grant reasonable partial custody or visitation rights, or both, to the unmarried child if it finds that visitation rights or partial custody, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the party and the child prior to the application.

The issue here is whether the circumstances of this case are encompassed within the terms of § 5312, as the trial and Superior Courts held. They accepted the definition of Webster's Third New International Dictionary as setting forth the common meaning of the word "separation:" "an act or instance of dividing or an act or instance of parting company." The Superior Court recognized that applying this definition to these parents "may be strained," but held that it was "legitimate under the circumstances." We agree.

We read § 5312 of the Act, when it refers to the parents having been "separated" for six months or more, as simply referring to the separation of the parents after conception of the child, as occurred in this case. Such a straight-forward reading of the Act is consistent with the broad and beneficent policies underlying this long overdue statute.

The essence of Appellant's argument appears to be that grandparents may not be awarded partial custody or visitation of their grandchild unless 1) the grandchild's parents were married and proceedings to dissolve the marriage had been

commenced, or 2) the grandchild's parents, though never married, had cohabited and maintained a lengthy, strong and significant relationship, before separating for at least six months. We do not agree and we find no cause to believe that the legislature intended to favor a person whose child becomes a parent in the course of a lengthy, strong and significant relationship as opposed to one whose child becomes a parent through a brief encounter.

Appellant's interpretation of § 5312 sets up a seemingly absurd contrast with § 5311. Under that section, a grandparent may seek partial custody or visitation of a grandchild where the child's parent (the grandparent's child) has died. It makes no mention of whether the grandchild's parents were ever married or separated, and so, unless there is a limitation found elsewhere, it would seem to apply even where the grandchild had been brought into being through a brief encounter. If this is true, had Mrs. Bishop's son died, she would have been able to seek partial custody or visitation under § 5311. Since he did not die, Appellant contends that, proceeding under § 5312, she may not. That conclusion is absurd.

In the statute's declaration of policy, 23 Pa.C.S.A. § 5301, the "General Assembly declares that it is the public policy of this Commonwealth, when in the best interest of the child, to assure a reasonable and continuing contact of the child with both parents after *a separation or dissolution of the marriage* and the sharing of the rights and responsibilities of child rearing by both parents and continuing contact of the child or children with grandparents when a parent is deceased, *divorced or separated.*" With this as background, one reading of the law that would maintain consistency throughout would assume that it applies only where the parents are married. Section 5311 would come into play when one of the partners to the marriage dies while the marriage is intact and ensure that the parents of the deceased partner would not be unreasonably cut off from contact with their grandchildren by their son-in-law or daughter-in-law. Section 5312 would apply when there is marital discord such that the partners to the marriage

have begun legal proceedings to dissolve the marriage, or have decided to live separate and apart, and ensure that the parents of the husband and wife would have the opportunity to maintain contact with their grandchildren even though their children were alienated from one another.

This interpretation has the disadvantage of "borrowing" from the Divorce Code to discern the meaning of the term "separated." It also results in a distinction that we find unfair between persons whose children bear grandchildren in a marital setting and those whose children bear grandchildren outside of marriage, allowing the former class to seek partial custody and visitation of their grandchildren while denying the same to the latter class. However, given that the legislature has elsewhere recognized the special status of the marriage relationship, if a distinction is to be drawn, it may be more appropriate to draw it along these lines. We do not believe that the legislature intended the courts to distinguish among non-marital relationships based on the amorphous concept of whether they are "lengthy, strong and significant."

In the face of a lack of certainty as to the legislative meaning, we cannot infer that the term "separation" requires a relationship similarly lengthy, strong and significant (as marriage) to warrant the remedy of grandparent visitation. Since there seem to be circumstances under the Act under which Bishop would be able to seek visitation (§ 5311) despite the absence of a relationship of any duration between her grandchild's parents, we read § 5312 in like manner. We think that this comports with the overwhelming policy considerations supporting the statute in question.

It does not take lengthy study of the writings of philosopher John Locke to conclude that our citizens retain natural rights. Article 1, Section 1, of our Pennsylvania Constitution states that:

All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquir-

ing, possessing and protecting property and reputation, and of pursuing their own happiness.

Nothing is more central to the happiness of many people than to look after the well being, and enjoy the society of, their grandchildren. Indeed, the only immortality most of us have in this life is the promise offered by children and grandchildren. After years of toil and worry in raising one's own children, grandparents look forward to the opportunity of spending time with their grandchildren, of spoiling them, and of passing on to them family history and the wisdom of ages. For too long this natural right was denied statutory recognition and protection. Now that it has been recognized, we find that the Act covers situations like the one presented in this case.

It must be remembered that grandchildren, too, have the natural right to know their grandparents and that they benefit greatly from that relationship. Grandparents give love unconditionally—without entanglement with authority or discipline, and often without pressures of other burdensome responsibilities. Children derive a greater sense of worthwhileness from grandparental attention and better see their place in the continuum of family history. Wisdom is imparted that can be attained nowhere else. The benefits derived by a grandchild from the society of his or her grandparents have been touched upon by psychologists and psychiatrists including, most prominently, Erik Erikson.[1] They are substantial benefits and should not be lightly regarded by our judicial system. The contention of the Appellant is directly contrary to the purposes of this statute which is intended to provide for best interests of the child.

We find that this grandparent fits within the parameters of the Act and that the *only* issue that should have been before the trial court and us was the best interests of the child. The trial court found that the best interests of the child would be

1. See, *e.g.*, Erik H. Erikson, "A Way of Looking at Things" (W.W. Norton and Co., 1987), at pp. 560–1, 640–1.

to enjoy the companionship of the grandparent and that should be and is enough for us.

Accordingly, the order of the Superior Court is affirmed.

LARSEN, J., did not participate in the consideration or decision of this matter.

ZAPPALA and CAPPY, JJ., concur in the result.

FLAHERTY, J., files a dissenting opinion in which NIX, C.J., joins.

FLAHERTY, Justice, dissenting.

To predicate grandparent visitation on the statutory requirement that "parents have been separated for six months or more" is unsound and injudicious in this case. As Mr. Justice Papadakos notes, separation is "dividing" or "parting company." Of course, to separate, divide, or part company, there must first be a unit to be divided or separated. As should be obvious, the act of procreation itself, without more, does not amount to a unity or conjunction which makes its illusory termination a "separation." In family law, as it is in common parlance, "separation" signifies the event of spouses parting company, not merely losing one of a pair of socks, as it were. An interpretation that separation follows a period of cohabitation sufficient to deem such a significant relationship, seems eminently more reasonable, and is perfectly consistent with the time-honored usage of the term "separation" in the area of domestic relations law and, indeed, common sense.

Furthermore, I see no absurdity in contrasting 23 Pa.C.S.A. § 5311 and § 5312. As we have seen, § 5312 justifies grandparent visitation on a separation of six months or more; § 5311 permits grandparent visitation when the child's parent is deceased. Mr. Justice Papadakos reasons that if the child's father in this case were deceased rather than wilfully neglectful, the grandmother would qualify for visitation under § 5311, forgetting that visitation under either section must be both reasonable and in the best interest of the child, neither of which is true in this case. The real absurdity, as I see it, is to

adopt a totally strained interpretation of the word "separation" to accommodate arrant pernicious behavior, as if such aberrant conduct were the norm by which we should construe the statute in question, thereby eviscerating a "long overdue" statute with such laudable ends and objectives.

I respectfully dissent and would reverse the order of the Superior Court.

NIX, C.J., joins this dissenting opinion.