**Shane FAUSEY, Appellant**

v.

**Cheryl HILLER, Appellee**

Superior Court of Pennsylvania.

Submitted Feb. 12, 2004.
Filed May 25, 2004.

Randi W. Dincher, Williamsport, for appellant.

Janice R. Yaw, Williamsport, for appellee.

Before: LALLY–GREEN, GANTMAN and CAVANAUGH, JJ.

## OPINION BY CAVANAUGH, J.

¶ 1 Appellant (father) appeals the August 1, 2003 order granting appellee, maternal grandmother (grandmother), partial physical custody of minor, Kaelen Fausey (born October 5, 1994), under the Grandparents' Visitation Act, 23 Pa.C.S.A. §§ 5311–5314. We affirm.

¶ 2 Kaelen's mother died of cancer on May 25, 2002, when Kaelen was seven years old. Father and mother were married until mother's death. Grandmother and Kaelen had a great deal of contact before the death of Kaelen's mother, and during the final two years before her death, their contact was almost daily. They shared a very close relationship through which grandmother helped to emotionally prepare Kaelen for his mother's death. The regular contact between Kaelen and appellee ended when Kaelen's mother died. The trial court found that appellee had made numerous attempts to obtain visits with Kaelen, but that appellant was not cooperative.

¶ 3 Grandmother sought partial custody and visitation rights under 23 Pa.C.S.A. § 5311. The trial court concluded that without a court order, Kaelen would have little or no contact with grandmother because of the following findings: 1) Father didn't foster visits before grandmother filed the custody petition; 2) Father's position on how much, if any contact is appropriate has been inconsistent; 3) Father's negative feelings toward grandmother interfere with his ability to make good decisions regarding Kaelen's contact with her; 4) Father alleges that grandmother is a threat to Kaelen's safety due to a history of alcohol abuse, domestic violence and the fact that her husband has Hepatitis C; and 5) Father alleges that spending time with grandmother would interfere in his father-son relationship with Kaelen because of the animosity between father and grandmother. Despite the court's recognition that father genuinely cares for his son, it found that the safety concerns he raised did not pose a meaningful threat to Kaelen, and that father was unlikely to allow Kaelen to spend time with grandmother absent a court order.

¶ 4 By order of court dated August 1, 2003, grandmother was granted one weekend of partial physical custody each month from 9:00 a.m. on Saturday until 7:00 p.m. on Sunday, as well as one week each summer.

¶ 5 Appellant raises the following two issues on appeal:

1. DID THE TRIAL COURT'S ORDER OF AUGUST 1, 2003 RESULT IN AN UNCONSTITUTIONAL INFRINGEMENT ON MR. FAUSEY'S FUNDAMENTAL LIBERTY RIGHT TO MAKE CHILD REARING DECISIONS IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION?

2. DOES THE PENNSYLVANIA GRANDPARENT ACT, 23 Pa.C.S.A. 5311 AND 5312 VIOLATE THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, FOR IT TREATS CHILDREN OF SINGLE PARENTS AND THOSE OF MARRIED PARENTS UNEQUALLY WITHOUT THERE BEING A SUFFICIENT GOVERNMENT INTEREST TO INTERFERE IN THE RIGHTS OF A SINGLE PARENT?

■ ¶ 6 We first address the constitutionality of 23 Pa.C.S.A. § 5311 with regard to the due process clause and then with regard to the equal protection clause. Because § 5312 is not implicated by this case, we will not consider it. The portion of the statute in question provides:

§ 5311. When parent deceased

If a parent of an unmarried child is deceased, the parents or grandparents of the deceased parent may be granted reasonable partial custody or visitation rights, or both, to the unmarried child by the court upon a finding that partial custody or visitation rights, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the deceased parent and the child prior to the application.

23 Pa.C.S.A. § 5311. This court has stated our standard for reviewing the constitutionality of a statute as follows:

[W]e note that properly enacted statutes enjoy a strong presumption of constitutionality. *Commonwealth v. Miller*, 455 Pa.Super. 534, 689 A.2d 238 (Pa.Super.1997). Our standard of review is limited to a consideration of whether the legislation at issue is clearly, palpably, and plainly in violation of the constitution. *Commonwealth v. Swinehart*, 541 Pa. 500, 664 A.2d 957 (Pa. [ ] 1995).

*In re C.C.J.*, 799 A.2d 116, 122 (Pa.Super.2002).

¶ 7 Our Supreme Court recently set forth the following:

When confronted with a constitutional challenge premised upon substantive due process grounds, the threshold inquiry is whether the challenged statute purports to restrict or regulate a constitutionally protected right. *Common-*

*wealth v. Burnsworth*, 543 Pa. 18, 669 A.2d 883, 889 (Pa.1995). If the statute restricts a fundamental right, it must be examined under strict scrutiny. *Smith v. Coyne*, 555 Pa. 21, 722 A.2d 1022, 1025 (Pa.1999). Pursuant to that analysis, legislation that significantly interferes with the exercise of a fundamental right will be upheld only if it is necessary to promote a compelling state interest and is narrowly tailored to effectuate that state purpose. *Nixon* [*v. Commonwealth* ], 576 Pa. 385, 839 A.2d 277, 286 (2003); *Commonwealth v. Robinson*, 497 Pa. 49, 438 A.2d 964 (Pa.1981), appeal dismissed, 457 U.S. 1101, 102 S.Ct. 2898, 73 L.Ed.2d 1310 (1982).

*Khan v. State Bd. of Auctioneer Examiners*, 842 A.2d 936, 947 (Pa.2004).

¶ 8 The United States Supreme Court has stated that the right of parents to make decisions about the upbringing of their children is a fundamental right. "[I]t cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel v. Granville*, 530 U.S. 57, 67, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Accordingly, we employ a strict scrutiny analysis to determine if § 5311 is necessary to promote a compelling state interest and is narrowly tailored to effectuate that purpose. *See Khan*, 842 A.2d at 947.

¶ 9 Appellant's argument relies heavily on the United States Supreme Court decision in *Troxel v. Granville, supra,* for the proposition that the application of § 5311 to this case violates the due process clause. The *Troxel* court found that a particular application of a very broad Washington state third-party visitation statute violated a mother's due process rights to make

decisions regarding her children.[1] This court recently addressed the applicability of *Troxel* to § 5311 of Pennsylvania's Grandparent Visitation Act, as follows:

In *Troxel* the Supreme Court found the application of a Washington state statute permitting "any person" to petition for visitation impermissibly broad and found that, under the facts of that case, it unconstitutionally infringed on the fundamental right of the parent to make decisions concerning her child. However, the *Troxel* Court cited with approval statutes comparable to 23 Pa.C.S. § 5311 ["When parent deceased"], which do not contain the broad, sweeping language like that in the Washington statute. Moreover, the *Troxel* Court determined the trial court erred by placing the burden on the parent to disprove that the best interests of the child would be served by granting visitation with grandparents. Here, we emphasize it is the grandparents' burden to demonstrate partial custody or visitation is in the best interest of the children and will not interfere with the parent-child relationship.

*Douglas v. Wright,* 801 A.2d 586, 590–91, n. 1 (Pa.Super.2002).

¶ 10 As noted by this court in *Douglas,* the Washington statute at issue in *Troxel* is readily distinguishable from the Pennsylvania statute under consideration. In *Troxel,* the U.S. Supreme Court explained:

Section 26.10.160(3), as applied to Granville and her family in this case, unconstitutionally infringes on that fundamental parental right. The Washington nonparental visitation statute is breathtakingly broad. According to the statute's text, "*any person* may petition the court for visitation rights *at any time,*"

and the court may grant such visitation rights whenever "visitation may serve ·*the best interest of the child.*" § 26.10.160(3) (emphases added). That language effectively permits any third party seeking visitation to subject any decision by a parent concerning visitation of the parent's children to state-court review. Once the visitation petition has been filed in court and the matter is placed before a judge, a parent's decision that visitation would not be in the child's best interest is accorded no deference. Section 26.10.160(3) contains no requirement that a court accord the parent's decision any presumption of validity or any weight whatsoever. Instead, the Washington statute places the best-interest determination solely in the hands of the judge. Should the judge disagree with the parent's estimation of the child's best interests, the judge's view necessarily prevails. Thus, in practical effect, in the State of Washington a court can disregard and overturn any decision by a fit custodial parent concerning visitation whenever a third party affected by the decision files a visitation petition, based solely on the judge's determination of the child's best interests. The Washington Supreme Court had the opportunity to give § 26.10.160(3) a narrower reading, but it declined to do so. See, e.g., 137 Wash.2d at 5, 969 P.2d at 23 ("[The statute] allows any person, at any time, to petition for visitation without regard to relationship to the child, without regard to changed circumstances, and without regard to harm"); id. at 20, 969 P.2d at 30 ("[The statute] allows 'any person' to petition for forced visitation of a child at 'any time' with the only re-

---

**1.** It is worth noting that the Washington statute was invalidated only as applied, and not on its face.

quirement being that the visitation serve the best interest of the child").

*Troxel v. Granville,* 530 U.S. 57, 67, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000).

¶ 11 By contrast, and as aptly explained in the trial court opinion, § 5311 is far more narrowly tailored than the Washington statute invalidated by *Troxel:*

> In summary, the *Troxel* court found three defects in the Washington statute and its application by the courts: The statute was "breathtakingly broad," a presumption was given in favor of the grandparents, and the trial court made slender findings in support of its decision.
>
> By contrast, the Pennsylvania statute at issue and its application do not suffer from defects contained in the Washington case.
>
> Section [5311] places limits on the persons who may petition: grandparents and great-grandparents. It also specifies under what circumstances the petition may be filed: a parent of the grandchild must be deceased. It also states when the petition may be granted: the partial custody or visitation must be in the best interest of the child, and the partial custody or visitation must not interfere with the parent-child relationship. Moreover, by placing the burden upon the petitioning grandparents to show that partial custody or visitation is in the best interest of the children and will not interfere with the parent-child relationship, Pennsylvania courts give deference to the parent's decision.
>
> And finally, § [5311] requires the court to consider the amount of personal contact between the parents or grandparents of the deceased parent and the child prior to the filing of the petition.

Trial Court Opinion at 10–11.

¶ 12 Importantly, the *Troxel* court deliberately explained the limited scope of its decision by stating:

> [W]e rest our decision on the sweeping breadth of § 26.10.160(3) and the application of that broad, unlimited power in this case[.] ... We do not, and need not, define today the precise scope of the parental due process right in the visitation context. In this respect, we agree with JUSTICE KENNEDY that the constitutionality of any standard for awarding visitation turns on the specific manner in which that standard is applied and that the constitutional protections in this area are best "elaborated with care." *Post,* at 198 (dissenting opinion). Because much state-court adjudication in this context occurs on a case-by-case basis, we would be hesitant to hold that specific nonparental visitation statutes violate the Due Process Clause as a per se matter. n1 ...
>
> n1    All 50 States have statutes that provide for grandparent visitation in some form...

*Troxel v. Granville,* 530 U.S. 57, 73–74, 120 S.Ct. 2054, 147 L.Ed.2d 49 (U.S.2000). We agree with the trial court that the overly broad terms of the Washington statute addressed by the *Troxel* court do not similarly encumber § 5311, which is markedly more narrow than the Washington statute and does not violate father's due process rights as applied in this case, and further discussed *infra.*

■ ¶ 13 We also find no violation of the equal protection clause in § 5311. Our Supreme Court has set forth the following:

> The essence of the constitutional principle of equal protection under the law is that like persons in like circumstances will be treated similarly. However, it does not require that all persons under all circumstances enjoy identical protection under the law. The right to equal protection under the law does not abso-

lutely prohibit the Commonwealth from classifying individuals for the purpose of receiving different treatment, and does not require equal treatment of people having different needs. The prohibition against treating people differently under the law does not preclude the Commonwealth from resorting to legislative classifications, provided that those classifications are reasonable rather than arbitrary and bear a reasonable relationship to the object of the legislation. In other words, a classification must rest upon some ground of difference which justifies the classification and have a fair and substantial relationship to the object of the legislation.

*Curtis v. Kline*, 542 Pa. 249, 666 A.2d 265, 267–68 (1995) (citations omitted).

¶ 14 To the extent that § 5311 treats children who have lost a parent to death differently than children who have not, it is for the justified and reasonable purpose of protecting a child's emotional well-being and accounting for the potentially different needs of a child whose parent has died. Our supreme court has put forth the following regarding the policy purposes behind this statute:

In the statute's declaration of policy, 23 P.S.[C.A.] § 5301, the "General Assembly declares that it is the public policy of this Commonwealth, when in the best interest of the child, to assure a reasonable and continuing contact of the child with both parents after a separation or dissolution of the marriage and the sharing of the rights and responsibilities of child rearing by both parents and continuing contact of the child or children with grandparents when a parent is deceased, divorced or separated." ... Section 5311 would come into play when one of the partners to the marriage dies while the marriage is intact and ensure that the parents of the deceased partner would not be unreasonably cut off from contact with their grandchildren by their son-in-law or daughter-in-law.

*Bishop v. Piller*, 536 Pa. 41, 637 A.2d 976, 978 (1994). We agree with the trial court that:

[E]ven under a strict scrutiny analysis, interpreting the statute to implicate the parents' fundamental right to make decisions regarding their children, § [5311] would still pass muster. The compelling purpose behind § [5311], as stated earlier, is to foster the emotional welfare of children. It is a remedy to protect children from an unwise decision by a parent to cut off meaningful and beneficial contact with a grandparent or great grandparent. The statute treats children from intact families different[ly] from children who have experienced the death of a parent. That classification makes perfect sense because it is precisely in those cases where the danger of alienation from a grandparent is greatest. Children from intact families have two parents, either of which may promote grandparent contact. When one parent is deceased, the chance of the living parent cutting off contact with a grandparent—especially with a parent of the deceased parent—is heightened. Therefore, those children need greater protection.

Trial Court Opinion at 17. To this we would add that a child has a natural right to share in the heritage of each of his parents, and § 5311 fosters preservation of this familial right.

◼ ¶ 15 As previously noted, properly enacted statutes enjoy a presumption of constitutionality and may be invalidated only if clearly, palpably and plainly in violation of the constitution. *In re C.C.J.*, 799 A.2d at 122. Section 5311 does not approach these criteria. Having found § 5311 constitutional, we briefly turn to

appellant's complaint that this specific application of the statute violated his rights and that the trial court abused its discretion in rendering the custody award.

¶ 16 The trial court properly accorded father, as a fit parent, the presumption that his decisions regarding Kaelen's visits with grandmother were in Kaelen's best interest. Nevertheless, the trial court found that grandmother overcame that presumption and met her burden of showing: 1) that partial custody would be in Kaelen's best interest; and 2) that partial custody would not interfere with the parent-child relationship. The court concluded that Kaelen's best interests would be served by granting partial custody to grandmother because of the following findings:

> Kaelen has a long-standing, very close relationship with Mrs. Hiller. He enjoys being at her home, and often does not want to leave when the visits are over. Mrs. Hiller is a warm, loving grandmother who spends her time with Kaelen doing things such as having picnics, gardening, swimming, playing games, and Kaelen's all-time favorite activity: going to the car races to see his uncle race. She also has family get-togethers on one or both days of her visit each month, which gives Kaelen the opportunity to play with his numerous cousins, second cousins, and other members of the maternal side of his family. Kaelen also is able to spend a significant amount of time with his great-grandfather, Jack Braim, who has always been an important person in Kaelen's life. And finally, when Kaelen is with Mrs. Hiller, he seeks and receives emotional support regarding the death of his mother, as described by Mrs. Hiller ... Mr. Fausey himself expressed concerns regarding Kaelen's inability to express his emotions regarding his mother's death. It appears that contact with his mother's side of the family is highly beneficial emotionally for Kaelen in helping him deal with the loss of his mother.

Trial Court Opinion at 6.

¶ 17 The court also found no evidence that grandmother's partial custody would interfere with the parent-child relationship or be detrimental to Kaelen in any way. *Id.* at 8.

¶ 18 "On issues of credibility and weight of the evidence, an appellate court defers to the findings of the trial judge, who has had the opportunity to observe the proceedings and the demeanor of the witnesses." *L.F.F. v. P.R.F.*, 828 A.2d 1148, 1152 (Pa.Super.2003). The trial court's findings are supported by the record and we accordingly defer to those findings and find that the court properly applied the law to the facts of this case.

¶ 19 In accordance with our standard of review, we find 23 Pa.C.S.A. § 5311 to be constitutional and we do not find that the August 1, 2003 order granting partial custody to maternal grandmother is violative of father's constitutional rights or manifestly unreasonable. Accordingly, we affirm the order granting partial custody to grandmother.

¶ 20 Order affirmed.

¶ 21 Judge LALLY–GREEN concurs in the result.