**L.A.L.,**

v.

**V.D.**

**Appeal of L.M.W. & B.E.W.,
Intervenors.**

Superior Court of Pennsylvania.

Submitted June 10, 2013.

Filed July 29, 2013.

Eric E. Winter, Bechtelsville, for appellant.

Jaime L. Wertz, Wyomissing, for L.L., appellee.

Vincent Dematto, Birdsburo, for V.D., appellee.

BEFORE: FORD ELLIOTT, P.J.E., PANELLA, and FITZGERALD,* JJ.

OPINION BY FITZGERALD, J.:

Appellants, L.M.W. and B.E.W., appeal from the order entered in the Berks County Court of Common Pleas dismissing their petition for partial custody of their grandson, D.D. ("Child"). We hold that section 5325(2) of the recently amended Child Custody Act[1] grants standing to grandparents of children born to parents who have never been married to each other. We vacate the order and remand for further proceedings consistent with this opinion.

Appellants are the paternal grandparents of Child. Child was born out of wedlock in 2010. His parents ended their relationship without marrying and, on October 5, 2011, entered into a custody agreement that provided for shared custody of Child between the father and the mother.

Approximately one year later, on October 31, 2012, Appellants filed a petition for partial custody. Appellants alleged, in relevant part, that Child's parents have maintained separate residences since October 20, 2011. The trial court held a hearing on January 16, 2013. The court conducted a "thorough review of the file and letter briefs submitted by counsel," and denied the petition on January 30, 2013. Trial Ct. Op., 3/18/13, at 1. The court reasoned that the plain meaning of section 5325(2) only gives standing to grandparents of children whose parents have been married and emphasized the state's interest in protecting and promoting marriage. The court also "evaluated all the relevant factors pertaining to the well-being of the minor child" in deciding whether Appellants should have standing.[2] Id. at 3. Appellants filed a timely notice of appeal on March 1, 2013.[3]

In this appeal, Appellants present a single claim for review, that the trial "court erred in finding that [they] lacked standing to pursue custody pursuant to 23 Pa.C.S. § 5325(2) as [they] are the paternal grandparents of the minor child at issue and the parents of the minor child have been sepa-

---

* Former Justice specially assigned to the Superior Court.

1. See P.L. 1106, No. 112 § 2 (enacted Nov. 23, 2010; effective Jan. 24, 2011).

2. We note that the best interest inquiry is "not [an] elemen[t] of standing, but rather [is a] requirement[ ] a grandparent with standing must satisfy to prevail on the merits of the custody claim." Malone v. Stonerook, 843 A.2d 1278, 1281 (Pa.Super.2004).

3. Appellants filed their timely Pa.R.A.P. 1925(b) statement along with their notice of appeal and the trial court issued a 1925(a) opinion on March 18, 2013. See Pa.R.A.P. 1925(a)(2).

rated for more than [six] months." Appellants' Brief at 4. In short, Appellants claim that the court misinterpreted section 5325(2) by concluding that the grandparents of a child whose parents never married lack standing to seek partial custody. Following our review, we agree with Appellants.

Generally,

Our standard of review over a custody order is for a gross abuse of discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused. Our scope of review over custody disputes is broad; this Court is not bound by the deductions and inferences the trial court derives from its findings of fact, nor must we accept the trial court's findings of fact when these findings are not supported by competent evidence of record. Our paramount concern in child custody matters is the best interests of the children.

*Yates v. Yates,* 963 A.2d 535, 539 (Pa.Super.2008) (citations omitted).

This appeal raises a question of statutory interpretation, which presents a question of law. *Hearst Television Inc. v. Norris,* —— Pa. ——, 54 A.3d 23, 29 (2011). Accordingly, our standard of review is *de novo* and our scope of review is plenary. *Id.*

When interpreting a statute, we are guided by the Statutory Construction Act, which provides, in relevant part:

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

\* \* \*

(5) The former law, if any, including other statutes upon the same or similar subjects.

1 Pa.C.S. § 1921(a)-(b), (c)(5).

Moreover, "when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." 1 Pa.C.S. § 1922(4).

It has been held, and rightly so, that where a decision of the Superior Court construing a statute was never modified by the Supreme Court, the presumption was that when the legislature subsequently enacted a similar statute dealing with the same subject matter, the legislature intended the same construction to be placed on the language of the subsequent statute.

*Commonwealth v. Dickson,* 591 Pa. 364, 918 A.2d 95, 107 (2007) (citation and internal quotation omitted).

Section 5325(2) of the Child Custody Act, which governs standing for grandparents and great-grandparents, provides in relevant part:

[G]randparents ... may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:

\* \* \*

(2) **where the parents of the child have been separated for a period of at**

**least six months** or have commenced and continued a proceeding to dissolve their marriage[.]

23 Pa.C.S. § 5325(2) (emphasis added). Section 5325 was enacted in 2010 and took effect on January 24, 2011.[4] *See* P.L. 1106, No. 112, § 2 ("the 2010 amendments").

Although this Court has yet to construe section 5325(2) in a reported decision, we have addressed the question of the standing of grandparents in custody or visitation proceedings under the predecessor statute, section 5312, which stated:

In all proceedings for dissolution, subsequent to the commencement of the proceeding and continuing thereafter or **when parents have been separated for six months or more,** the court may, upon application of the parent or grandparent of a party, grant reasonable partial custody or visitation rights, or both, to the unmarried child if it finds that visitation rights or partial custody, or both, would be in the best interest of the child and would not interfere with the parent-child relationship.

23 Pa.C.S. § 5312 (repealed 2010) (emphasis added).

In *Bishop v. Piller,* 399 Pa.Super. 52, 581 A.2d 670 (1990), *aff'd,* 536 Pa. 41, 637 A.2d 976 (1994) (plurality), a paternal grandmother petitioned for visitation of her grandchild, when the child's parents "never cohabited nor planned to be married," although the "[f]ather's name was placed on the birth certificate" of the child. *Id.* at 671. "The child . . . lived with [his m]other in maternal grandmother's home since his birth." *Id.* at 671–72. The trial court found the paternal grandmother had standing under 5312 because the plain meaning of the word "separated" did not require that parents be married. *Id.* at 672. The trial court also conducted a best interest analysis and, as a result, granted the grandmother visitation rights. *Id.* at 671. On appeal, this Court found the trial court's interpretation of 5312 was "legitimate," although noting "that the understanding of the word 'separate' when attached to people who are romantically involved is usually applied to the dissolution of a marriage." *Id.* at 672.

On appeal to the Pennsylvania Supreme Court, a divided Court affirmed this Court's interpretation of "separation." *Bishop,* 637 A.2d at 979. Justice Papadakos wrote a lead opinion, in which two justices concurred in the result, and two dissented.[5] The Court read the term "separated" in section 5312 "as simply referring to the separation of the parents after the conception of the child." *Id.* at 977. Moreover, the Court found "no cause to believe that the legislature intended to favor a person whose child becomes a parent in the course of a lengthy, strong and significant relationship as opposed to one whose child becomes a parent through a brief encounter." *Id.*

This Court interpreted section 5312 again in *Malone,* 843 A.2d 1278. In that case, the paternal grandmother appealed from an order dismissing her complaint for the custody and/or visitation of her grand-

---

4. Appellants filed the instant petition on October 31, 2012. Therefore, section 5325(2) guided the consideration of standing.

5. Justice Flaherty wrote the dissent, joined by Chief Justice Nix. *Bishop,* 637 A.2d at 979 (Flaherty, J., dissenting). Justice Flaherty disagreed with the majority's interpretation of "separation" and emphasized, "[a]n inter-

pretation that separation follows a period of cohabitation sufficient to deem such a significant relationship, seems eminently more reasonable, and is perfectly consistent with the time-honored usage of the term 'separation' in the area of domestic relations law and, indeed, common sense." *Id.*

child based on lack of standing. *Id.* at 1278. The child's parents "were never married and ha[d] no ongoing relationship." *Id.* at 1279. The parents entered into a consent custody order awarding primary physical custody to the child's mother and partial physical custody to his father. *Id.* The agreement also required that "[d]uring the time periods that the Father has the child, the child [was] not to be left alone with the parental grandmother unless an emergency arises." *Id.* The trial court found that the grandmother did not have standing because of the clause. *Id.*

On appeal, this Court reversed, finding that section 5312 granted standing to grandparents to seek visitation with a grandchild born out of wedlock where the child's parents' relationship had ended. *Id.* at 1280–81. This Court reasoned:

> Our review of the language of section 5312 leads us to conclude that [the g]randmother's interpretation of the statute is consistent with the plain meaning of the text. The language of section 5312 clearly and unambiguously provides that the grandparents of a child whose parents are divorced, involved in dissolution proceedings or have been separated for six months or more may maintain an action for visitation or partial custody. Because [the parents] have been separated since June 2000, Grandmother has standing to pursue visitation or partial custody of [the child] under section 5312.

*Id.* The Pennsylvania Supreme Court subsequently denied allowance of appeal at *Malone v. Stonerook,* 580 Pa. 698, 860 A.2d 124 (2004).

In light of the foregoing case authority, we note that our interpretation of the term "separated" as applied to unwed parents was not disturbed nor modified by the Supreme Court. *See id.; Bishop,* 637 A.2d 976. Thus, we find that Appellants would have been entitled to standing under the former section 5312. *See Dickson,* 918 A.2d at 107. Therefore, the question in the instant appeal is whether our prior interpretation of section 5312, which recognized the standing of grandparents to seek custody or visitation to a child born out of wedlock, survives the 2010 amendments to the Child Custody Act. We hold that it does.

Because section 5325(2) and former section 5312 concern the same subject matter, there is a strong presumption that the General Assembly intended the existing judicial construction "to be placed upon the same language." *See* 1 Pa.C.S. § 1922(4). When enacting the 2010 amendments to the Child Custody Act, the General Assembly did not redefine the term "separated," *cf.* 23 Pa.C.S. § 5322, nor did it substantially modify the use of the term in the context of 5325(2). Although the legislature enacted a separate subsection governing standing, the only discernible differences between former section 5312 and section 5322 are: (1) the change in the length of separation time from "six months or more" to "at least six months;" and (2) the reversal of the order of separation and dissolution of marriage as independent bases for standing. Thus, the plain language of 5325(2) reveals no indication that the General Assembly intended to abrogate our construction of the term "separated."

Therefore, we hold that section 5325(2), as did former section 5312, grants standing in custody proceedings to grandparents of children born out of wedlock. Accordingly, we find that the trial court erred when it interpreted the statute to apply when the child's parents have previously been .

married.[6]

Because the trial court found that Appellants lacked standing, it did not review the evidence necessary to evaluate whether granting Appellants' petition would be in the best interest of the Child. Section 5328(c)(1) of the Child Custody Act requires a court consider the following factors when awarding custody to grandparents and great-grandparents:

(i) the amount of personal contact between the child and the party prior to the filing of the action;

(ii) whether the award interferes with any parent-child relationship; and

(iii) whether the award is in the best interest of the child.

23 Pa.C.S. § 5328(c)(1)(i)-(iii). Section 5328(a) provides a non-exhaustive list of factors that courts must consider when determining the best interest of the child, including:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

---

**6.** The trial court found that Appellants lacked standing by interpreting section 5312 in light of *Schmehl v. Wegelin*, 592 Pa. 581, 927 A.2d 183 (2007). In that case, the Pennsylvania Supreme Court noted that, while section 5312 "enable[d] grandparents to seek partial custody or visitation of their grandchild when the child's parents are divorced, engaged in divorce proceedings, or have been separated for six months or more," "standing ... is not afforded [when the] parents are married and living together.[1]" *Id.* at 184. The Court held that this disparate treatment did not offend the Equal Protection Clause of the United States Constitution. *Id.* at 190. However, at no point did the *Schmehl* Court consider the standing of grandparents to seek custody of children born outside of wedlock.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1)-(16).

Because the present record does not evince a thorough analysis of all relevant factors, we cannot conclude that the trial court properly considered the Child's best interest. Therefore, we vacate the order dismissing Appellants' petition and remand this case for a hearing to decide Appellants' petition in light of the foregoing standards.

Order vacated. Case remanded. Jurisdiction relinquished.