J-S06033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| C.B. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|           Appellant | |
|           v. | |
| F.W. F/K/A F.M. AND R.D. | |
|           Appellee | |
|           v. | No. 1268 MDA 2015 |
| J.F.K. AND J.C.K. | |
|           Appellee | |

Appeal from the Order Entered July 2, 2015
In the Court of Common Pleas of Columbia County
Civil Division at No(s): 2009-CV-0001006-CU

BEFORE:  PANELLA, J., MUNDY, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:　　　　　　　**FILED FEBRUARY 23, 2016**

Appellant, C.B. ("Paternal Grandmother"), the paternal grandmother of three minor children, B.D. (born September of 2004), R.D. (born October 2005), and M.D. (born January of 2007) ("the Children"), appeals from the order dated July 2, 2015, denying her petition to intervene and a counterclaim for custody.  The trial court found that Paternal Grandmother lacked standing to seek custody or visitation of the Children.  We vacate the order and remand for further proceedings consistent with this memorandum.

F.W., f/k/a F.M., ("Mother") and R.D. ("Father") had the Children out of wedlock.  Mother and Father never married, but lived together in 2006 for

---

*Former Justice specially assigned to the Superior Court.

a short time. From January of 2010 through October of 2010, Father was incarcerated in Columbia County, Pennsylvania. On March 11, 2010, Paternal Grandmother filed a petition for custody and visitation of the Children. Paternal Grandmother resides with her daughter, R.B. On June 10, 2010, the trial court adopted the master's recommendations as an order and awarded primary physical and legal custody to Mother and partial physical custody to Paternal Grandmother.

On October 18, 2010, the trial court adopted the master's recommendations as an order, under which Mother remained with primary physical and legal custody, and Paternal Grandmother had partial custody/ visitation of the Children at or near a McDonald's restaurant each Saturday from 1:00 p.m. to 3:00 p.m. On November 15, 2010, Mother filed exceptions. On December 16, 2010, a hearing was held. The trial court found Mother in contempt and fined her for failing to comply with the terms of the order. On January 12, 2011, the trial court entered an order awarding Mother primary physical custody with partial physical custody to Paternal Grandmother. On January 21, 2011, Mother filed exceptions.

On February 22, 2011, Father filed a petition to modify custody. On March 24, 2011, the trial court entered an order awarding primary physical custody to Mother and shared legal custody to Mother and Father. On April 2011, a Protection from Abuse ("PFA") order was entered against Father, in favor of Mother. On June 27, 2011, the trial court accepted the master's

recommendations as an order awarding Mother primary physical custody and shared legal custody of the Children between Mother and Father. In September of 2011, Mother married J.W. On October 4, 2011, the trial court adopted the master's recommendations as an order, awarding primary physical custody to Mother and shared legal custody to Mother and Father. The order further stated Paternal Grandmother had no physical custody in her own right, but may visit the Children through Father. On October 10, 2011, Father sought review of the custody order. Father was imprisoned in Columbia County Jail.

On December 21, 2011, Paternal Grandmother brought a contempt action against Mother alleging Mother had disobeyed the visitation order. On January 13, 2012, the trial court denied the petition for contempt. On January 18, 2012, the trial court adopted the master's recommendations as an order providing that Paternal Grandmother did not have independent rights to the Children. The order further stated Paternal Grandmother may have partial physical custody as Mother and Paternal Grandmother agree.

On January 24, 2012, Mother sought permission to relocate to Virginia with the Children. At that time, Mother lived in Columbia County with J.W., the Children's maternal grandparents, J.F.K. and J.C.K. ("Maternal Grandparents"), and the Children. Father was incarcerated. On February 17, 2012, Father filed a petition to modify custody. On February 27, 2012,

the trial court adopted the master's recommendations as an order granting Mother's petition for relocation to Virginia.

On June 25, 2012, Mother filed a petition to modify custody seeking sole custody due to Father's incarceration and drug trafficking charges. On September 21, 2012, the trial court entered an order awarding primary physical and legal custody to Mother and concluding that Paternal Grandmother lacked standing. Father was granted partial custody due to his incarceration in Columbia County. On March 4, 2013, Paternal Grandmother and Father filed a counter-affidavit regarding relocation. On July 24, 2013, Paternal Grandmother filed a petition for contempt against Mother for failure to comply with the custody order. On August 2, 2013, Paternal Grandmother's petition for contempt was denied.

On May 21, 2014, Paternal Grandmother filed a petition to modify the custody order seeking visitation rights with the Children. On June 20, 2014, the trial court entered an order dismissing Paternal Grandmother's petition for lack of standing.

On January 16, 2015, Maternal Grandparents filed a petition to modify custody seeking primary physical and legal custody of the Children because the Children had been living with them since January of 2012. On March 6, 2015, Paternal Grandmother filed a petition to intervene in the custody action and a counterclaim for custody. On March 20, 2015, the trial court entered an order that adopted the master's recommendations, awarding

J-S06033-16

primary physical and legal custody of the Children to Maternal Grandparents and periods of partial physical custody to Mother. On March 23, 2015, Maternal Grandparents filed a response and a motion to show cause why the court should not grant Paternal Grandmother her requested relief, and a motion to dismiss the counterclaim.

On July 2, 2015, the trial court held a hearing to determine whether Paternal Grandmother had standing to intervene in the custody proceedings. Following the hearing, the trial court found Paternal Grandmother lacked standing. On July 22, 2015, Paternal Grandmother filed a notice of appeal from the order, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[1]

On appeal, Paternal Grandmother raises the following issues:

1. Whether [Paternal Grandmother] can intervene in the custody action filed [?]

---

[1] Paternal Grandmother did not file a Statement of Errors Complained of on Appeal with her notice of appeal, as required by Pa.R.A.P. 1925(a)(2) in this Children's Fast Track appeal. On August 7, 2015, this Court directed Paternal Grandmother to file such Statement in the trial court, to serve the Statement on the trial judge and other parties, and to file a copy of the Statement with the Prothonotary of the Superior Court by August 17, 2015. This Court has received a copy of her Statement, filed on August 14, 2015. Because Paternal Grandmother timely complied with this Court's order, and no party claims prejudice as a result of Paternal Grandmother's procedural error, we will not quash or dismiss this appeal. *See In re K.T.E.L.*, 983 A.2d 745 (Pa.Super. 2009); *cf. J.P. v. S.P.*, 991 A.2d 904 (Pa.Super. 2010) (appellant waived all issues by failing to timely comply with the trial court's direct order to file a concise statement).

2. Whether [Paternal Grandmother] should be given grandparent rights [?]

Paternal Grandmother's Brief at 5.

A trial court's determination regarding standing will not be disturbed absent an abuse of discretion. *Butler v. Illes*, 747 A.2d 943, 944 (Pa.Super. 2000).

In custody cases, our standard of review is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa.Super. 2012) (citation omitted).

This Court has stated: "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." *Bulgarelli v. Bulgarelli*, 934 A.2d 107, 111 (Pa.Super. 2007) (quotation omitted).

Section 5324 of the Child Custody Act provides as follows:

**§ 5324.  Standing for any form of physical custody or legal custody**

The following individuals may file an action under this chapter for any form of physical custody or legal custody:

(1) A parent of the child.

(2) A person who stands in loco parentis to the child.

(3) A grandparent of the child who is not in loco parentis to the child:

(i) whose relationship with the child began either with the consent of a parent of the child or under a court order;

(ii) who assumes or is willing to assume responsibility for the child; and

(iii) when one of the following conditions is met:

(A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

(B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

(C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S.A. § 5324.

Section 5325 of the Child Custody Act provides as follows:

**§ 5325. Standing for partial physical custody and supervised physical custody**

In addition to situations set forth in section 5324 (relating to standing in any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:

(1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section;

(2) where the parents of the child have been separated for a period of at least six months or have commenced and continued a proceeding to dissolve their marriage; or

(3) when the child has, for a period of at least 12 consecutive months, resided with the grandparent or great-grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, an action must be filed within six months after the removal of the child from the home.

23 Pa.C.S.A. § 5325.

Although not explicitly stated in Paternal Grandmother's petition to intervene and petition for child custody, Paternal Grandmother made it clear at the July 2, 2015, hearing that she brought her claim of standing to seek partial custody of the Children pursuant to our grandparent visitation and custody statute at section 5325. Indeed, the court recognized this fact:

> **THE COURT:** [i]t looks like it's [Paternal Grandmother's claim] for partial custody and visitation. It [section 5325] says if an unmarried child [sic]—which this would be—has resided with their grandparents or great-grandparents for a period of 12 months or more and is subsequently removed from the home by his parents, which would be the children, the grandparents may petition the Court for an Order granting them reasonable partial custody, if it finds that visitation would bein the best interest of

the children and would not interfere with the parent/child relationships.

So, before I get – it seems like I have to have a hearing on that latter part if the first part was met 'cause I don't think we're looking for a petition for total physical custody.

**COUNSEL:** No, [Paternal Grandmother] just want[s] to see [the Children].

N.T., 7/2.15 at 18.[2] Thereafter, the court also appeared to take judicial notice of Paternal Grandmother's standing under section 5325(2) in light of our jurisprudence construing the statute to apply with equal force to cases where parents were never married.[3] **See** N.T. at 21, 24.

Nevertheless, the court viewed Paternal Grandmother's failure to appeal from previous orders pronouncing her lack of standing as a bar to claiming standing in the present matter. For reasons that remain unclear, the court also suggested that proof of facts establishing standing under section 5325(3) represented the sole means by which to surmount this bar, but it discerned no such offer of proof in Paternal Grandmother's case:

**THE COURT:** Yes, and it's a leap in a way [referring to the court's previous comment interpreting the 2012 Master's report as making a best interests determination against Paternal Grandmother obtaining custody], but the fact still remains that

---

[2] Throughout the July 2, 2015 hearing, the trial court refers to section 5313 as governing authority. The General Assembly, however, adopted an act that repealed section 5313 and replaced it with sections 5324 and 5325. **See** Act of 2010, Nov. 23, P.L. 1106, No. 112, § 1, effective in 60 days [Jan. 24, 2011]. Accordingly, we replace all trial court references to repealed section 5313 with references to section 5325.

[3] **See L.A.L. v. V.D**., 72 A.3d 690, 694-95 (Pa.Super. 2013).

in order to secure standing back then both prongs [standing and best interests of the children] of the test would have to have been met. When the Court said no standing three times the Court said no standing that meant the test had not been met and it was either the 12 months and/or the second prong of best interest. So it wasn't appealed.

\*\*\*

[A]nd, I mean, she hasn't had any significant contact with these kids, let's just say, for three years in 2012, probably well before that, according to [Mother] here. I just don't think that fits under the spirit or certainly the letter of [section 5325].

\*\*\*

[T]hat's just the way it goes in these cases [to counsel's protestation that Mother prevented Paternal Grandmother from seeing the Children]. I mean, she doesn't have standing. . . . And we laid out the rules in 2010 so that they would be fairly clear and in this one she just doesn't fit the mold.

\*\*\*

I don't think you meet prong number one [section 5325 standing]. Even by – I mean, [Mother] here said possibly a year and a half . . . back in 2006 or seven, but since then it's determined by the Court there's no standing and that prong hasn't been reestablished. And I think based upon my reading of this, you have to have residence with the grandparents for 12 months or more to establish standing and the 12 months, given this fact situation, would have to start some time after 2012 if not '13 and '14.

\*\*\*

I think once standing is out, then you got to [sic] reestablish standing. So I will do this.

> AND NOW, this date, Petitioner's objections to the petition to intervene are granted. The Court finds that the proposed intervenor [Paternal Grandmother] . . . . does not have standing under 23 Pa.C.S. Section [5325] in that the Court specifically finds that the minor children did not reside with [Paternal Grandmother]. . . for a period of 12 months or more since it was first determined by Court Order of 2012 which was un-appealed that she did not have standing. The Court notes that her lack of standing

> was subsequently affirmed by Court Orders in 2013
> and 2014, both of which Orders were not appealed.

N.T. at 25-26, 28-29, 29-30, 32, 33.

Paternal Grandmother maintains the position she took at the hearing, namely, that she only wants to visit her grandchildren, not take custody away from Mother. Paternal Grandmother's brief at 6. In its Pa.R.A.P. 1925(a) opinion explaining its reasons for rejecting Paternal Grandmother's position, the trial court provides the following analysis:

> Paternal Grandmother relinquished any standing that she may have had. Moreover, she does not meet the requirements for custody since there are no allegations of *in loco parentis*, dependency, abuse or residing in the home for twelve months recently. Additionally, Paternal Grandmother does not have standing for partial custody or supervised custody since no parent is deceased, *the Children's parents were not married*, and the Children have not resided with Paternal Grandmother recently.

Trial Court Opinion, at 5 (emphasis added).[4]. Neither governing authority nor the facts of this case supports the trial court's analysis.

The first sentence of the Pa.R.A.P. 1925(a) opinion excerpt reflects the rationale expressed at the July hearing that Paternal Grandmother had no standing to pursue her petition to intervene because she failed to appeal the court's previous custody orders denying her claim of standing—specifically,

---

[4] We find no error of law or abuse of discretion on the part of the trial court in concluding that Paternal Grandmother is not the parent of the Child, does not stand *in loco parentis*, and the Children have not resided with Paternal Grandmother for at least twelve consecutive months to pursue primary physical custody in this matter. **See Butler**, 747 A.2d at 944.

its orders entered on October 4, 2011, September 21, 2012, and June 20, 2014. *See* Trial Court Opinion, 9/10/15, at 3, 5. This Court has held, however, that standing is a jurisdictional prerequisite in a grandparent visitation action and may be raised any time, by any party, or by the court *sua sponte*. *See R.M. v. J.S.*, 20 A.3d 496 (Pa.Super. 2011). In light of this jurisprudence, we decline to uphold the trial court's application of waiver doctrine to bar Paternal Grandmother's ability to claim standing.

The trial court also seems to have deemed section 5325(2) standing either unavailing in light of the perceived waiver bar or, instead, inapplicable because the Children's parents were never married.[5] Regardless of the confounding nature of the record on this point, we reject the trial court's position in either case, as no waiver bar applied, and our decision in *L.A.L.*, *supra*, construed section 5325(2) to grant standing even if parents had never married. Consequently, because Paternal Grandmother established that the Children's parents had been separated for at least six months as required by the statute, the trial court committed an error of law in concluding that Paternal Grandmother lacked standing to press her claim for partial custody or supervised custody.

_____

[5] In this regard, the trial court's Pa.R.A.P. 1925(a) opinion predicating section 5325(2) eligibility on parents' wedlock does not align with its acknowledgment of *L.A.L.* during the custody hearing.

Having disposed of the present matter for lack of standing, the trial court did not review the evidence necessary to evaluate whether granting Paternal Grandmother's petition would be in the best interests of the Children. Section 5328(c)(1) of the Child Custody Act requires a court to consider the following factors when making any order of custody involving grandparents and great-grandparents:

(i) the amount of personal contact between the child and the party prior to the filing of the action;

(ii) whether the award interferes with any parent-child relationship; and

(iii) whether the award is in the best interest of the child.

23 Pa.C.S. § 5328(c)(1)(i)-(iii). Section 5328(a) provides a non-exhaustive list of factors that courts must consider when determining the best interest of the child, including:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

- 13 -

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a)(1)-(16).

Because the present record does not evidence a thorough analysis of all relevant factors, we cannot conclude that the trial court properly

considered the Children's best interests.[6]  Therefore, we vacate the order dismissing Paternal Grandmother's petition and remand this case for a hearing to decide Paternal Grandmother's petition in light of the foregoing standards.

Order vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/23/2016

_____

[6] The trial court's passing reference to a 2012 Master's report regarding best interests, noted *supra*, cannot pass for the searching inquiry mandated under section 5328.